**GOULD, INC., a Delaware Corporation, with its principal place of business in Illinois, Plaintiff,**

v.

**WISCONSIN DEPARTMENT OF INDUSTRY, LABOR AND HUMAN RELATIONS, and Wisconsin Department of Administration, State Bureau of Procurement, and James Gosling, Secretary, Wisconsin Department of Industry, Labor and Human Relations, John K. Driscoll, Director, State Bureau of Procurement, Wisconsin Department of Administration, Jan Richardson, State Bureau of Procurement, Wisconsin Department of Administration and Gary C. Shealy, Chief, Labor Standards Bureau, Wisconsin Department of Industry, Labor, and Human Relations, Equal Rights Division, Defendants.**

No. 83–C–104–C.

United States District Court, W.D. Wisconsin.

Dec. 20, 1983.

Zel S. Rice II, Sparta, Wis., for plaintiff.

Jonathan P. Siner, Asst. Atty. Gen., Madison, Wis., for defendants.

## ORDER

CRABB, Chief Judge.

In this civil action, plaintiff Gould, Inc., seeks injunctive and declaratory relief with

respect to defendants' continued enforcement of Wis.Stats. §§ 101.245 and 16.75(8) (1981), which bar an employer from doing business with the State of Wisconsin or its agencies if the employer has had three or more National Labor Relations Board findings which have been affirmed by a federal court of appeals. Plaintiff asserts that the statutes are unconstitutional in that they (1) violate the supremacy clause of Article VI of the United States Constitution; and (2) violate plaintiff's rights under the due process and equal protection clauses of the Fourteenth Amendment.

In an order dated February 18, 1983, I issued a preliminary injunction ordering defendants to honor Gould's existing contracts with the state, to entertain future procurement contract bids from Gould, and to affirmatively revoke all notices to state agencies and state vendors that Gould is barred from doing business with the state.

Plaintiff and defendants have now moved for summary judgment, contending they are entitled to judgment as a matter of law. From the parties' stipulation of fact, I find there are no genuine issues as to the following facts.

### FACTS

Plaintiff is a Delaware corporation with its principal place of business in the state of Illinois. Plaintiff has approximately twenty separate and autonomous divisions, each engaged in the development, manufacture, and sale of distinct and often unrelated products at separate locations throughout the United States and certain foreign countries. Each division has a separate budget and profit and loss statement, as well as separate personnel and facilities. Each division is responsible for the conduct of its own labor relations.

Defendants, Wisconsin Department of Industry, Labor and Human Relations, Wisconsin Department of Administration, and the State Bureau of Procurement, are all administrative agencies of the State of Wisconsin. The four individual defendants are heads of, or employees within, these agencies. James Gosling is the Secretary of the Department of Industry, Labor and Human Relations; John K. Driscoll is the Director of the Bureau of Procurement; Gary C. Shealy is the chief of the Labor Standards Bureau within the Department of Industry, Labor and Human Relations; and Jan Richardson is an employee within the Bureau of Procurement.

On May 21, 1980, Wis.Stats. §§ 101.245 and 16.75(8) (1981) became effective. These statutes are commonly referred to as the Labor Law Violators List statutes. They require the Department of Industry, Labor and Human Relations to maintain a list of employers who have had three or more adverse findings by the National Labor Relations Board affirmed by a federal court of appeals within the preceding five years. Once an employer is put on the list, it is barred from selling products in the State of Wisconsin for three years.[1]

Prior to the effective date of these statutes, various divisions of plaintiff were found guilty by the National Labor Relations Board of four separate violations of the National Labor Relations Act. Each Board determination was appealed before May 21, 1980, and three of the four determinations were affirmed by federal courts

---

1. Section 101.245 provides:
 (1) The [Department of Industry, Labor and Human Relations] shall maintain a list of persons or firms that have been found by the national labor relations board, and by 3 different final decisions of a federal court within a 5-year period as determined under sub. (1m), if the 3 final decisions involved a cumulative finding of at least 3 separate violations, to have violated the national labor relations act....
 (1m) On or before July 1 of each year the department shall compile the list required un-

der sub. (1) based upon the 5-year period which ended on September 30 of the year preceding.
 * . * * * * *
 (4) A name shall remain on the list for 3 years.
 Section 16.75(8) provides:
 The [Department of Administration] shall not purchase any product known to be manufactured or sold by any person or firm included on the list of labor law violators compiled by the [Department of Industry, Labor and Human Relations] under § 101.245.

of appeal before May 21, 1980.[2] All four cases involved the refusal of one of plaintiff's divisions to comply with a determination of the Board. In three of the four cases, the Board initiated the appeal after the relevant division had refused to comply. In the fourth case, both parties cross-appealed to the court of appeals. As of August 25, 1982, none of the divisions involved in these National Labor Relations Act proceedings was still owned by plaintiff.

By letter dated August 25, 1982, plaintiff was notified of its inclusion on the labor law violators list and its debarment until July 1, 1985. As of the date of the letter, plaintiff's Medical Products Division and its Instruments Division were doing business with the State of Wisconsin in amounts in excess of $10,000, and had outstanding bids submitted to the State of Wisconsin in excess of $10,000. These divisions, as well as all of plaintiff's divisions, are proscribed under Wisconsin's Labor Law Violators List statutes from further bidding for state procurement contracts until July 1, 1985. Prior to this court's entry of a preliminary injunction against them, defendants notified all current and potential state vendors that they could not sell products to the State of Wisconsin which contain Gould-produced components. Finally, absent the preliminary injunction, all outstanding Gould contracts with the State of Wisconsin would have been cancelled as soon as the state could have done so without penalty.

## OPINION

Jurisdiction is present. 28 U.S.C. § 1331 and 1343(3).

### I. *Eleventh Amendment Immunity*

■ The three non-individual defendants, the Department of Industry, Labor and Human Relations, the Department of Administration, and the Bureau of Procurement, have moved for dismissal of this suit against them for lack of subject matter jurisdiction. The law is clear that under the Eleventh Amendment to the United States Constitution, state governments and their administrative agencies are immune from federal suits for monetary damages, *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974), and for prospective injunctive relief, *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978). Therefore, this suit will be dismissed with respect to the three non-individual defendants.

■ However, plaintiff's suit against the four employees and departmental heads presents a different issue. The Eleventh Amendment immunity doctrine does not preclude a federal court from enjoining state officials sued in their individual capacity from enforcing any state law found to be repugnant to the United States Constitution. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *see Edelman v. Jordan*, 415 U.S. at 664, 94 S.Ct. at 1356. Such prospective equitable relief may be granted by a federal court even though such an injunction might have ancillary effects on the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979).

Plaintiff's suit to enjoin the individual defendants' continued enforcement of Wis. Stats. §§ 101.245 and 16.75(8) (1981) does state a valid cause of action over which this court may exercise jurisdiction.[3]

### II. *Federal Preemption*

#### A. *Current Labor Preemption Doctrine*

The proper analytical approach to the doctrine of federal labor law preemption is

---

**2.** *Gould, Inc.*, 216 N.L.R.B. 1031 (1975), *enforced in part, reversed in part,* 1977 CCH Labor Relations Cas. ¶ 11,953 (per curiam) (6th Cir.1976); *Gould, Inc.*, 221 N.L.R.B. 899 (1975), *enforced,* 550 F.2d 1060 (6th Cir.1977); *Gould, Inc.*, 237 N.L.R.B. 66 (1978), *enforced,* 610 F.2d 316 (5th Cir.1980); *Gould, Inc.*, 238 N.L.R.B. 618 (1978), *enforced,* 638 F.2d 159 (10th Cir.1980).

**3.** In its complaint, plaintiff requested a damages award in an amount to exceed $10,000. In its motion and briefs for summary judgment, plaintiff makes no explicit references to its request for monetary damages. I assume from that omission that plaintiff has abandoned that claim. *See Taylor v. Fee,* 233 F.2d 251, 259 (7th Cir.1956).

not easy to discern from the case law. *See, e.g., Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 285, 91 S.Ct. 1909, 1917, 29 L.Ed.2d 473 (1971); Cox, *Recent Developments in Federal Labor Law Preemption,* 41 Ohio St. L.J. 277, 300 (1980). The United States Supreme Court discussed the doctrine in *New York Telephone Co. v. New York State Department of Labor,* 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979), but the plurality of opinions in that case left many unanswered questions. Nonetheless, I believe a logical approach can be derived from the *New York Telephone* opinion and from the line of cases preceding it.

■ The United States Supreme Court has identified two tests for federal labor preemption. The first is the "arguably protected/arguably prohibited" test set out in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Under this test, the initial inquiry is whether the activity purported to be regulated by the state action is either protected under § 7 of the National Labor Relations Act, 29 U.S.C. § 157 or prohibited under § 8 of that Act, 29 U.S.C. § 158, or arguably so protected or prohibited. *Garmon,* 359 U.S. at 245, 79 S.Ct. at 779. The second inquiry under *Garmon* is whether the regulated activity is "merely [a] peripheral concern of the Labor Management Relations Act ... [or] touche[s] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction," it cannot be inferred that Congress has deprived the states of the power to act. *Farmer v. Carpenters,* 430 U.S. 290, 296–97, 97 S.Ct. 1056, 1061, 51 L.Ed.2d 338 (1977) (quoting *Garmon,* 359 U.S. at 243–44, 79 S.Ct. at 778–79).

In *Farmer,* the Supreme Court emphasized that the *Garmon* analysis is not to be applied mechanically. Rather, application of the second inquiry is to be by a case-by-case balancing test under which a court must determine whether an exception to the general presumption of federal preemption is warranted. A state's legitimate nonlabor interests in regulating the activity in question must be balanced against the federal government's interests in uniform labor regulation and the likely degree to which the state regulation will interfere with those federal interests. *Farmer,* 430 U.S. at 297–301, 97 S.Ct. at 1061–1064. If the activity subject to state regulation is merely a peripheral concern of the National Labor Relations Act, minimal weight is to be given to the federal interest factor. If the state regulated activity touches state nonlabor interests deeply rooted in local feeling and responsibility, the state interests factor is given a relatively large weight in the balancing equation. Finally, if the state law "is so structured and administered that, in virtually all instances, it is safe to presume that [state] judicial supervision will not disserve the interests promoted by the federal labor statutes," *Farmer,* 430 U.S. at 297, 97 S.Ct. at 1062 (citing *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 297–98, 91 S.Ct. 1909, 1923, 29 L.Ed.2d 473 (1971)), then the degree of state interference with federal interests is given a small value in the balancing analysis.

It is important to note that *Garmon's* "absent compelling congressional direction" language is not to be invoked merely by mechanically classifying the state regulated private activity as a peripheral concern of federal labor law, as touching deeply rooted local interests, or as virtually never disserving federal interests. Rather, it is only if the net balancing of these factors weighs against federal preemption that the general presumption favoring federal preemption will *not* be invoked "in the absence of compelling congressional direction" to preempt.

■ The second avenue to federal labor preemption was developed in *Local 20, Teamsters Union v. Morton,* 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964) and *Lodge 76, International Ass'n of Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). Under the *Mor-*

ton/Machinists test, a court looks to whether Congress intended the neither protected nor prohibited private conduct to be governed only by the free play of economic forces. *Machinists*, 427 U.S. at 144, 96 S.Ct. at 2555; *New York Telephone*, 440 U.S. at 530–31, 99 S.Ct. at 1335–36. If the answer is "yes," then *Farmer's* balancing test analysis must be performed.[4]

■ Both commentators and courts have recognized that the essence of federal labor preemption analysis is the *Farmer* balancing test. That is, in the absence of an express statement by Congress, *all* private conduct will be either arguably protected, arguably prohibited, or left to the free play of economic forces, and thus fall into either the *Garmon* or *Morton/Machinists* line of analysis. Since both these doctrines dictate that the *Farmer* balancing test should be applied to the facts of each case, that test is the correct focal point for federal labor preemption analysis. *See* Cox, *Labor Law Preemption Revisited*, 85 Harv.L. Rev. 1337, 1351–68 (1972) and *Recent Development*, 64 Cornell L.Rev. 595, 609–12 (1979) (cited in *Palm Beach Co. v. Jour-*

*neymen's and Prod. Allied Servs.*, 519 F.Supp. 705, 711–12 n. 10 (S.D.N.Y.1981)); *see also Wilkes-Barre v. Newspaper Guild*, 504 F.Supp. 54, 66 (M.D.Pa.1980) ("The cases that have excepted tort claims from the preemption doctrine *are consistent with the 'frustration' test, 'reflect[ing] a balanced inquiry* into such factors as the nature of the state and federal interest in regulation and the potential for interference with federal regulation.'") (quoting *Garmon*, 359 U.S. at 244, 79 S.Ct. at 779) (emphasis added).

If, on balance, the three *Farmer* factors (state interest, federal interest in uniform labor regulation, and frustration of that federal interest) weigh in favor of state regulation, there is no federal preemption.[5] If, however, the balance of the three *Farmer* factors weighs in favor of preemption, the state law must be declared preempted.[6]

## B. Merits

■ Defendants assert that the state's proprietary interest in its purchases of

---

**4.** The second part of the *Morton/Machinists* test is the focal point of much of the confusion over federal labor law preemption. In *Machinists v. Wisconsin Employment Relations Com'n*, 427 U.S. at 147–48, 96 S.Ct. at 2556–57, the Court stated that the "crucial inquiry" is whether "the exercise of plenary state authority to curtail or entirely prohibit self-help would frustrate effective implementation of the Act's processes," (quoting *Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 380, 89 S.Ct. 1109, 1116, 22 L.Ed.2d 344 (1969)). The authors of the various opinions in *New York Tel. Co. v. New York State Dep't of Labor*, 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979) tended to focus their disagreement upon what presumption of congressional intent follows from this "crucial inquiry," with a "majority" of concurring and dissenting justices agreeing that any state regulation which significantly affects the balance of economic bargaining forces between labor and management is presumptively preempted in the absence of express congressional direction to the contrary. *Id.* at 547–49, 99 S.Ct. at 1344–45 (Blackmun, Marshall, JJ., concurring); *id.* at 560, 99 S.Ct. at 1351 (Powell, Stewart, JJ., and Burger, C.J., dissenting); *see The Supreme Court, 1978 Term*, 93 Harv.L.Rev. 60, 270 (1979). Unfortunately, this controversy in *New York Telephone* obscured the fact that while *Machinists* identified as a "crucial inquiry" the

question whether exercise of state authority would frustrate implementation of the Act, *Machinists* did not hold that it was the *sole* inquiry. Indeed, in *Machinists*, the Court recognized that under this second test for federal labor law preemption, the other two factors of the overall *Garmon* balancing test are also relevant. *Machinists*, 427 U.S. at 136, 96 S.Ct. at 2551. *See Teamsters v. Morton*, 377 U.S. 252, 257, 84 S.Ct. 1253, 1257, 12 L.Ed.2d 280 (1964). Moreover, in *New York Telephone*, Justice Stevens' plurality opinion found that the general applicability and protection of deeply rooted local interests of the New York unemployment compensation law counterbalanced the law's frustrating effect upon federal labor law interests. *New York Telephone*, 440 U.S. at 540, 99 S.Ct. at 1341. In his concurring opinion, Justice Blackmun agreed that the *Garmon* "deeply rooted local interests" factor might be relevant under the *Morton/Machinists* test for preemption, but thought it irrelevant under the particular facts of the case. *Id.* at 550–51, 99 S.Ct. at 1346.

**5.** Of course, this assumes that there is no express congressional direction of preemption.

**6.** Again, this assumes no express congressional statement of deference to state power in the specific area or activity under scrutiny.

goods and services is a traditionally local matter deeply rooted in local feeling and responsibility.[7]

In deciding whether similar assertions met the first element of the *Farmer* balancing test, other courts have asked whether the state law is one of "broad general application" or one "specifically directed towards the governance of industrial relations." *See, e.g., Garmon,* 359 U.S. at 244, 79 S.Ct. at 779. Although both *Garmon* and *Farmer,* 430 U.S. at 300, 97 S.Ct. at 1063, emphasized that the general applicability of a state law is not sufficient to exempt it from preemption, in both cases, as well as in the plurality and concurring opinions in *New York Telephone,* the Court recognized that this factor may be probative of whether the state law has as a predominant purpose the enhancement of legitimate, nonlabor, deeply rooted local interests. *New York Telephone,* 440 U.S. at 532–33, 99 S.Ct. at 1336–37 (plurality) and at 550–51, 99 S.Ct. at 1346 (concurrence). In general, the Supreme Court has found a deeply rooted local interest only in cases involving state regulation of "personal torts and violence to property, and [its]

holdings have been closely circumscribed." *Wilkes-Barre v. Newspaper Guild,* 504 F.Supp. at 66 (citing cases).

In *New York Telephone,* a plurality of the Court concluded that New York's unemployment compensation statute should be treated as one reflecting deeply rooted local interests because the predominant purpose of that statutory scheme was "not to regulate the bargaining relationship between the two classes [labor and management] but instead to provide an efficient means of insuring employment security in the State." *New York Telephone,* 440 U.S. at 533, 99 S.Ct. at 1337. The plurality also relied heavily on the substantial evidence that in fashioning the participatory federal unemployment compensation scheme, Congress had been sensitive to the states' interests in determining the substantive provisions and eligibility criteria of their unemployment compensation programs. *Id.* at 539, 99 S.Ct. at 1340.

The holdings in these cases tend to undercut the force of the defendant's assertion. First, the essence of the Labor Law Violators List law is not one of general applicability. Rather, it is directed specif-

---

**7.** Defendants have relied heavily upon the "market participant" doctrine enunciated in *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976), *Reeves, Inc. v. Stake,* 447 U.S. 429, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980) and succeeding cases. Defendants argue that the state is not regulating private conduct between labor and management but is merely influencing it pursuant to Wisconsin's legitimate proprietary powers. Under the *Hughes/Reeves* doctrine, state action is not subject to the traditional balancing analysis under the dormant commerce clause, *see, e.g., Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), if the state is acting as a "market participant" rather than a "market regulator." *White v. Massachusetts Council of Constr. Employers,* — U.S. ——, 103 S.Ct. 1042, 1045–46, 75 L.Ed.2d 1 (1983). In essence, defendants argue that a similar "market participant" categorical exception also should be applied to exempt state proprietary action from scrutiny under the federal labor law preemption analysis. This is incorrect. In *Hughes v. Alexandria Scrap,* the Court noted expressly that this exception from dormant commerce clause scrutiny arose only "in the absence of congressional action...." *Alexandria Scrap,* 426 U.S. at 810, 96 S.Ct. at 2498.

Nothing in the commerce clause prohibits *congressional* restrictions of state actions which have the purpose or effect of interfering with the free flow of interstate commerce or which interfere with the uniformity and supremacy of federal labor law. Only the Tenth Amendment raises such a possible limitation on federal preemption power and defendants do not assert that the statutes in this case are protected from federal National Labor Relations Act regulation under the Tenth Amendment's state immunity doctrine as set forth in *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Indeed, such an argument would appear dubious given the Supreme Court's analysis of the third prong of the *National League of Cities* test in *E.E.O.C. v. Wyoming,* — U.S. ——, 103 S.Ct. 1054, 1060–64, 75 L.Ed.2d 18 (1983). Therefore, the federal labor law preemption balancing test must be performed to ascertain whether Congress intended implicitly to preempt state laws such as Wis.Stats. §§ 101.245 and 16.75(8). Whether these statutes promote local proprietary interests is relevant only insofar as that is probative in determining whether such interests are "deeply rooted in local feeling and responsibility," *i.e.,* whether they promote legitimate, nonlabor state interests.

ically towards affecting the labor relations of those employers who are adjudicated federal labor law violators. Defendants have not suggested that §§ 101.245 and 16.75(8) have any legitimate nonlabor purpose, such as providing remedies for personal torts and violence to property or fashioning an unemployment compensation program. Rather, defendants assert merely that a "deeply rooted historical power of a state is its proprietary capacity to choose from whom it will purchase goods and services." (Defendants' Brief in Support of Defendants' Motion for Summary Judgment at 9). Such a claim for categorical exemption from federal labor preemption scrutiny is unpersuasive. *See supra* note 7.

It may be that the exercise of this proprietary function is deeply rooted in tradition. However, in this instance, the exercise of that function has the wholly illegitimate purpose of discouraging federal labor law violations by employers. Defendants concede that this is the purpose of §§ 101.-245 and 16.75(8):

> The state has a deeply rooted policy of discouraging labor law violations, and the State, as a market participator in the purchase of goods and products, can so restrict its purchasers so as not to promote labor law violators as an exception to NLRA preemption ... Wisconsin is not engaging in direct state regulation of private labor conduct, but is merely seeking to *influence private conduct* already prescribed [sic] by federal labor policy.

Defendants' Brief, cited *supra* at 12, 18 (emphasis in original). I conclude that the weight to be accorded the state interest

reflected in §§ 101.245 and 16.75(8) is minimal at best.

Under *Farmer*, the second element is the magnitude of the federal interest in relation to the state regulation. That is, if the private activity subject to state regulation is merely a peripheral concern of the National Labor Relations Act, federal labor interests are only minimally affected by the state action and, therefore, are accorded slight weight in the balancing analysis.

The traditional federal interests in federal labor law preemption have been generally labeled as those of "primary jurisdiction" and "federal supremacy." *See, e.g., Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 199–200, 98 S.Ct. 1745, 1758–1759, 56 L.Ed.2d 209 (1978). In essence, these interests are the basis of the *Garmon* "arguably protected/arguably prohibited" and the *Morton/Machinists* "free play of private economic forces" tests.[8]

These federal interests, aimed at ensuring a uniform national approach to governmental regulation of labor relations, will always outweigh a state interest that is *not* a deeply rooted, legitimate nonlabor interest *if* the state regulation significantly affects or infringes upon the federal interests. Because I have found that the state's interest in this case is not a deeply rooted one, the only remaining issue to be determined is the degree to which §§ 101.245 and 16.75(8) affect federal labor interests adversely.[9]

Employers who want to appeal from Board decisions will be deterred by Wisconsin's categorical refusal to purchase goods from employers who have three National

---

**8.** That is, if the activity is either arguably protected or prohibited by the National Labor Relations Act, this federal regulation of the activity has primary jurisdiction over any state regulation. If indeed Congress intended to leave the activity to the free play of private economic forces, federal supremacy over any state regulation of the conduct is appropriate under the supremacy clause. In both situations there is a need for a uniform national approach to governmental regulation of labor relations.

**9.** This, I believe, is what the Court meant by its statement in *New York Telephone* that the "cru-

cial inquiry" is whether "the exercise of plenary state authority to curtail or entirely prohibit self-help would frustrate effective implementation of the Act's processes." That is, the greater the degree to which the state law frustrates or infringes upon federal labor law uniformity and supremacy interests, the less likely it is that the state law has as its *predominant* purpose or effect legitimate, nonlabor, deeply rooted local interests. In essence, the Court used the frustration prong as a stand-in for the other two elements of the *Farmer* balancing test. *See supra* n. 4.

Labor Relations Board convictions that have been affirmed in whole or in part by a federal court of appeals. Furthermore, employers who might refuse to comply with a Board decision in order to cause the Board to appeal will be deterred from doing so. This state law infringes upon the role of the federal judiciary prescribed under the National Labor Relations Act, *cf. In re Sewell*, 690 F.2d 403, 409 (4th Cir.1982):

> To permit a union to [sue an employer in state court] for refusing to bargain [with a union whose certification the employer contests] in violation of § 8(a)(5)—*a refusal made necessary by the Act in order that the employer can contest certification in a [federal] court of appeals* —would, in the words of *Farmer*, present a "realistic threat of interference with the federal regulatory scheme." 430 U.S. at 305 [97 S.Ct. at 1066]....

(Emphasis added.)

Furthermore, a declaration by this court that Wisconsin's statutes are not preempted would open the door for other state debarment statutes, each listing a different number or mix of federal labor violations and convictions as a prerequisite. This would make it difficult for employers to predict the consequences of their actions, *cf. Garner v. Teamsters Union*, 346 U.S. 485, 490, 74 S.Ct. 161, 165, 98 L.Ed. 228 (1953) (Exclusive jurisdiction is vested in the Board "to obtain uniform application of [the Act's] substantive rules and to avoid [the] diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies."). In essence, it is a primary function of the

Board to determine which "gray area" private acts fall within the protected, prohibited, or "free play" categories. Wisconsin's law deters employers from engaging in any such "gray area" activities out of fear that the activity might later be declared a federal labor law violation, and state business might thereby be lost.

Thus, Wisconsin's statutes are likely to affect significantly both the initial Board determination that an activity is protected, prohibited, or left to market forces under the Act, and review of Board decisions by the federal courts of appeals. Moreover, §§ 101.245 and 16.75(8) explicitly provide for substantial cumulative penalties (for three or more affirmed labor law violations) beyond the remedies prescribed by the Board and the Act in general. *Cf. San Diego Building Trades Council v. Garmon*, 359 U.S. at 247, 79 S.Ct. at 780 ("Since remedies form an ingredient of any integrated scheme of regulation, to allow the State to grant a remedy here which has been withheld from the National Labor Relations Board only accentuates the danger of conflict.").

■ In summary, I conclude that both the purpose and effect of §§ 101.245 and 16.75(8) are to significantly infringe upon and inhibit activities and interests that are central to the federal labor policy enunciated in the National Labor Relations Act. Legitimate, nonlabor local interests are not primarily or even significantly furthered by the statutes. Therefore, in the absence of compelling congressional direction to the contrary,[10] the *Farmer* balancing analysis

---

10. Indeed, as plaintiff points out, any discernible congressional intent is apparently *in favor* of federal preemption of the Wisconsin statutes since a similar debarment proposal for federal government procurements was proposed and rejected by Congress. *See* Proposed Labor Reform Bill of 1978, S. 2467 & H.R. 8410, 95th Cong., 2d Sess. (1978). Although Congress did not expressly consider whether the states similarly should be proscribed from debarring private employers for federal labor law violations, this certainly provides no implication that Congress would reach such a result if it were to consider the issue. Thus, this case is distinguished from *New York Tel. v. New York Labor*

*Dep't*, 440 U.S. 519, 536–44, 99 S.Ct. 1328, 1339–43, 59 L.Ed.2d 553 (1979), *id.* at 546–47, 99 S.Ct. at 1344 (Brennan, J., concurring) and *id.* at 547, 99 S.Ct. at 1344 (Blackmun, Marshall, JJ., concurring), where in reaching the conclusion that Congress did not intend the National Labor Relations Act to preempt unemployment schemes a majority of justices relied upon the substantial evidence of congressional intent to grant broad discretion to the states in fashioning their unemployment compensation programs.

Again, in their arguments about the relevancy of the congressional refusal to authorize federal debarment of labor law violators, defendants confuse federal labor preemption doctrine with

compels the conclusion that these statutes are preempted by federal labor law and, thus, unconstitutional under the supremacy clause of the United States Constitution.[11]

## ORDER

IT IS HEREBY ORDERED that

1) Wis.Stats. §§ 101.245 and 16.75(8) (1981) are preempted by the federal labor laws and thus unconstitutional under the Supremacy Clause of Article VI of the United States Constitution;

2) defendants are permanently enjoined from (a) debarring plaintiff from doing business with the State of Wisconsin pursuant to §§ 101.245 and 16.75(8); (b) refusing to purchase from any state vendor products which contain components produced by plaintiff's divisions; and (c) including plaintiff on the "Labor Law Violators List."

---

the Tenth Amendment's state immunity doctrine. *See* Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment at 4–6; *see supra* n. 7.

11. Because I find that Wis.Stats. §§ 101.245 and 16.75(8) (1981) are preempted by federal labor law, I do not reach plaintiff's due process and equal protection claims.