WISCONSIN DEPARTMENT OF INDUSTRY, LABOR
AND HUMAN RELATIONS ET AL. *v.* GOULD INC.

No. 84–1484.   Argued December 9, 1985—Decided February 26, 1986

BLACKMUN, J., delivered the opinion for a unanimous Court.

*Charles D. Hoornstra,* Assistant Attorney General of Wisconsin, argued the cause for appellants. With him on the briefs was *Bronson C. La Follette,* Attorney General.

*Columbus R. Gangemi, Jr.,* argued the cause for appellee. With him on the brief were *George B. Christensen, Gerald C. Peterson, Paul B. Biebel, Jr.,* and *John N. Bilanko.\**

JUSTICE BLACKMUN delivered the opinion of the Court.

The question in this case is whether the National Labor Relations Act (NLRA), 29 U. S. C. § 151 *et seq.,* pre-empts a Wisconsin statute debarring certain repeat violators of the Act from doing business with the State. We hold that it does.

I

Wisconsin has directed its Department of Industry, Labor and Human Relations to maintain a list of every person or firm found by judicially enforced orders of the National Labor Relations Board to have violated the NLRA in three separate cases within a 5-year period. See Wis. Stat. § 101.245 (1983–1984).[1] State procurement agents are statu-

---

*Briefs of *amici curiae* urging reversal were filed for the State of Connecticut by *Joseph I. Lieberman,* Attorney General, *Elliot F. Gerson,* Deputy Attorney General, and *Arnold B. Feigin, Richard T. Sponzo,* and *Robert E. Walsh,* Assistant Attorneys General; for the National Governors' Association et al. by *Benna Ruth Solomon* and *Peter J. Kalis;* and for the American Federation of Labor and Congress of Industrial Organizations by *Marsha Berzon, David M. Silberman,* and *Laurence Gold.*

Briefs of *amici curiae* urging affirmance were filed for the National Labor Relations Board by *Norton J. Come, Linda Sher,* and *Elinor Hadley Stillman;* for the Chamber of Commerce of the United States by *Peter G. Nash, Dixie L. Atwater,* and *Stephen A. Bokat.*

[1] Section 101.245 provides in relevant part:

"(1) The department [of industry, labor and human relations] shall maintain a list of persons or firms that have been found by the national labor relations board, and by 3 different final decisions of a federal court within a

torily forbidden to purchase "any product known to be manufactured or sold by any person or firm included on the list of labor law violators." § 16.75(8).[2] A name remains on the violators' list for three years. § 101.245(4).

5-year period as determined under sub. (1m), if the 3 final decisions involved a cumulative finding of at least three separate violations, to have violated the national labor relations act, 29 U. S. C. 151 et seq., and of persons or firms that have been found to be in contempt of court for failure to correct a violation of the national labor relations act on 3 or more occasions by a court within a 5-year period as determined under sub. (1m) if the 3 contempt findings involved a cumulative total of at least 3 different violations.

"(1m) On or before July 1 of each year the department shall compile the list required under sub. (1) based upon the 5-year period which ended on September 30 of the year preceding.

"(2) This list may be compiled from the records of the national labor relations board.

"(3) Whenever a new name is added to this list the department shall send the name to the department of administration for actions as provided in s. 16.75(8).

"(4) A name shall remain on the list for 3 years."

The statute was enacted as 1979 Wis. Laws, ch. 340, § 3. It became effective May 21, 1980.

[2] Section 16.75(8) provides in relevant part:

"The department [of administration] shall not purchase any product known to be manufactured or sold by any person or firm included on the list of labor law violators compiled by the department of industry, labor and human relations under s. 101.245. The secretary may waive this subsection if maintenance, repair or operating supplies are required to maintain systems or equipment which were purchased by the state from a person or firm included on the list prior to the date of inclusion on the list, or if the secretary finds that there exists an emergency which threatens the public health, safety or welfare and a waiver is necessary to meet the emergency."

We are advised that the statutory ban applies only to purchases by the State and not to purchasing decisions of counties, municipalities, or other political subdivisions of the State. Tr. of Oral Arg. 4.

In addition to disqualifying repeat violators of the NLRA, Wisconsin provides statutory preferences to bids from Wisconsin companies, minority businesses, employers of disabled workers, and prison industries. See Wis. Stat. §§ 16.75(1)(a), (3m)(b), (3s)(a), and (3t)(c) (1983–1984).

Appellee Gould Inc. is a Delaware corporation with its principal place of business in Illinois. In 1982, Wisconsin placed Gould on its list of labor law violators following the judicial enforcement of four Board orders against various divisions of the company, none of which was located in Wisconsin and none of which Gould still owned at the time of its debarment. The State informed Gould that it would enter into no new contract with the company until 1985. The State also announced that it would continue its current contracts with Gould only as long as necessary to avoid contractual penalties, and that while Gould was on the list the State would not purchase products containing components produced by the company. At the time, Gould held state contracts worth over $10,000, and had outstanding bids for additional contracts in excess of $10,000.

Gould filed this action for injunctive and declaratory relief, arguing that the Wisconsin debarment scheme was preempted by the NLRA and violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[3] The United States District Court for the Western District of Wisconsin granted Gould summary judgment on the preemption claim, and did not reach the arguments pertaining to the Fourteenth Amendment. 576 F. Supp. 1290 (1983). The court enjoined the defendant state officials from refusing to do business with Gould, from refusing to purchase products with Gould components, and from including Gould on the list of labor law violators. *Id.*, at 1299; App. to Juris. State-

---

[3] The original complaint also sought monetary damages, but Gould apparently abandoned this request in its motion and briefs for summary judgment. See 576 F. Supp. 1290, 1293, n. 3 (WD Wis. 1983).

Although Gould's debarment was scheduled to end in 1985, Wisconsin does not contend that the case is moot. At a minimum, the problem presented is "capable of repetition, yet evading review." *E. g.*, *Dunn* v. *Blumstein*, 405 U. S. 330, 333, n. 2 (1972); *Moore* v. *Ogilvie*, 394 U. S. 814, 816 (1969); *Southern Pacific Terminal Co.* v. *ICC*, 219 U. S. 498, 515 (1911).

ment 86, 87.[4]  The Court of Appeals for the Seventh Circuit affirmed in relevant part.  750 F. 2d 608 (1984).  We noted probable jurisdiction, 471 U. S. 1115 (1985).  As did the District Court and the Court of Appeals, we find it necessary to reach only the pre-emption issue.

## II

It is by now a commonplace that in passing the NLRA Congress largely displaced state regulation of industrial relations.  Although some controversy continues over the Act's pre-emptive scope, certain principles are reasonably settled.  Central among them is the general rule set forth in *San Diego Building Trades Council* v. *Garmon*, 359 U. S. 236 (1959), that States may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits.  Because "conflict is imminent" whenever "two separate remedies are brought to bear on the same activity," *Garner* v. *Teamsters*, 346 U. S. 485, 498–499 (1953), the *Garmon* rule prevents States not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the Act. See 359 U. S., at 247.  The rule is designed to prevent "conflict in its broadest sense" with the "complex and interrelated federal scheme of law, remedy, and administration," *id.*, at 243, and this Court has recognized that "[c]onflict in technique can be fully as disruptive to the system Congress erected as conflict in overt policy." *Motor Coach Employees* v. *Lockridge*, 403 U. S. 274, 287 (1971).

---

[4] The complaint named as defendants three state agencies, including the Department of Industry, Labor and Human Relations, and four state officials.  The District Court dismissed the agency defendants under the Eleventh Amendment but, pursuant to *Ex parte Young*, 209 U. S. 123 (1908), allowed the suit to proceed against the state officials.  576 F. Supp., at 1293.  Gould did not appeal the dismissal of the agency defendants, and they appear in this Court only as nominal parties under the Court's Rule 10.4.

Consequently, there can be little doubt that the NLRA would prevent Wisconsin from forbidding *private parties* within the State to do business with repeat labor law violators. Like civil damages for picketing, which the Court refused to allow in *Garmon*, a prohibition against in-state private contracts would interfere with Congress' "integrated scheme of regulation" by adding a remedy to those prescribed by the NLRA. 359 U. S., at 247. Nor does it matter that a supplemental remedy is different in kind from those that may be ordered by the Board, for "judicial concern has necessarily focused on the nature of the activities which the States have sought to regulate, rather than on the method of regulation adopted." *Id.*, at 243; *Lockridge*, 403 U. S., at 292. Indeed, "to allow the State to grant a remedy . . . which has been withheld from the National Labor Relations Board only accentuates the danger of conflict," *Garmon*, 359 U. S., at 247, because "the range and nature of those remedies that are and are not available is a fundamental part" of the comprehensive system established by Congress. *Lockridge*, 403 U. S., at 287.

Wisconsin does not assert that it could bar its residents from doing business with repeat violators of the NLRA. It contends, however, that the statutory scheme invoked against Gould escapes pre-emption because it is an exercise of the State's spending power rather than its regulatory power. But that seems to us a distinction without a difference, at least in this case, because on its face the debarment statute serves plainly as a means of enforcing the NLRA. The State concedes, as we think it must, that the point of the statute is to deter labor law violations and to reward "fidelity to the law." Tr. of Oral Arg. 4, 6; Brief for Defendants in Support of Motion for Summary Judgment in No. 83–C–1045, (WD Wis.), p. 18. No other purpose could credibly be ascribed, given the rigid and undiscriminating manner in which the statute operates: firms adjudged to have violated the

NLRA three times are automatically deprived of the opportunity to compete for the State's business.[5]

Because Wisconsin's debarment law functions unambiguously as a supplemental sanction for violations of the NLRA, it conflicts with the Board's comprehensive regulation of industrial relations in precisely the same way as would a state statute preventing repeat labor law violators from doing any business with private parties within the State. Moreover, if Wisconsin's debarment law is valid, nothing prevents other States from taking similar action against labor law violators. Indeed, at least four other States already have passed legislation disqualifying repeat or continuing offenders of the NLRA from competing for state contracts.[6] Each additional statute incrementally diminishes the Board's control over enforcement of the NLRA and thus further detracts

---

[5] The conflict between the challenged debarment statute and the NLRA is made all the more obvious by the essentially punitive rather than corrective nature of Wisconsin's supplemental remedy. The regulatory scheme established for labor relations by Congress is "essentially remedial," and the Board is not generally authorized to impose penalties solely for the purpose of deterrence or retribution. *Republic Steel Corp.* v. *NLRB*, 311 U. S. 7, 10–12 (1940). Wisconsin's debarment sanction, in contrast, functions as punishment and serves no corrective purpose. Punitive sanctions are inconsistent not only with the remedial philosophy of the NLRA, but also in certain situations with the Act's procedural logic. For example, the Board's certification of a bargaining representative is not subject to direct judicial appeal. An employer who believes that the Board erred in approving an election or defining a bargaining unit thus may obtain administrative and judicial review only by refusing to bargain and awaiting an enforcement action by the Board for violation of the Act. See *Magnesium Casting Co.* v. *NLRB*, 401 U. S. 137, 139 (1971); *AFL* v. *NLRB*, 308 U. S. 401 (1940). One of Gould's violations in fact occurred in precisely this manner. See *Gould, Inc., Elec. Components Div.* v. *NLRB*, 610 F. 2d 316 (CA5 1980). An unsuccessful challenge of this sort, if pursued in good faith, will generally present an especially inappropriate occasion for punitive sanctions.

[6] See Conn. Gen. Stat. § 31–57a (1985); Md. State Finance & Procurement Code Ann. § 13–404 (1985); Mich. Comp. Laws §§ 423.322, .323, and .324 (Supp. 1985); Ohio Rev. Code Ann. § 121.23 (1984).

from the "integrated scheme of regulation" created by Congress.

That Wisconsin has chosen to use its spending power rather than its police power does not significantly lessen the inherent potential for conflict when "two separate remedies are brought to bear on the same activity," *Garner*, 346 U. S., at 498–499. To uphold the Wisconsin penalty simply because it operates through state purchasing decisions therefore would make little sense. "It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern." *Lockridge*, 403 U. S., at 292.

## III

Wisconsin notes correctly that state action in the nature of "market participation" is not subject to the restrictions placed on state regulatory power by the Commerce Clause. See *White* v. *Massachusetts Council of Constr. Employers, Inc.*, 460 U. S. 204 (1983); *Reeves, Inc.* v. *Stake*, 447 U. S. 429 (1980); *Hughes* v. *Alexandria Scrap Corp.*, 426 U. S. 794 (1976). We agree with the Court of Appeals, however, that by flatly prohibiting state purchases from repeat labor law violators Wisconsin "simply is not functioning as a private purchaser of services," 750 F. 2d, at 614; for all practical purposes, Wisconsin's debarment scheme is tantamount to regulation.

In any event, the "market participant" doctrine reflects the particular concerns underlying the Commerce Clause, not any general notion regarding the necessary extent of state power in areas where Congress has acted. In addition to authorizing congressional action, the Commerce Clause limits state action in the absence of federal approval. The Clause restricts "state taxes and regulatory measures impeding free private trade in the national marketplace," but "[t]here is no indication of a constitutional plan to limit the ability of the States themselves to operate freely in the free market." *Reeves*, 447 U. S., at 437. The NLRA, in contrast, was de-

signed in large part to "entrus[t] administration of the labor policy for the Nation to a centralized administrative agency." *Garmon*, 359 U. S., at 242; see also, *e. g.*, *NLRB* v. *Nash-Finch Co.*, 404 U. S. 138, 145 (1971) ("The Board is the sole protector of the 'national interest' defined with particularity in the Act") (footnote omitted). What the Commerce Clause would permit States to do in the absence of the NLRA is thus an entirely different question from what States may do with the Act in place. Congressional purpose is of course "'the ultimate touchstone'" of pre-emption analysis, see, *e. g.*, *Allis-Chalmers Corp.* v. *Lueck*, 471 U. S. 202, 208 (1985), quoting *Retail Clerks* v. *Schermerhorn*, 375 U. S. 96, 103 (1963), and we cannot believe that Congress intended to allow States to interfere with the "interrelated federal scheme of law, remedy, and administration," *Garmon*, 359 U. S., at 243, under the NLRA as long as they did so through exercises of the spending power.

Nothing in the NLRA, of course, prevents private purchasers from boycotting labor law violators. But government occupies a unique position of power in our society, and its conduct, regardless of form, is rightly subject to special restraints. Outside the area of Commerce Clause jurisprudence, it is far from unusual for federal law to prohibit States from making spending decisions in ways that are permissible for private parties. See, *e. g.*, *Elrod* v. *Burns*, 427 U. S. 347 (1976); *Perry* v. *Sindermann*, 408 U. S. 593 (1972). The NLRA, moreover, has long been understood to protect a range of conduct against state but not private interference. See, *e. g.*, *Machinists* v. *Wisconsin Employment Relations Comm'n*, 427 U. S. 132, 148–151 (1976); *Teamsters* v. *Morton*, 377 U. S. 252, 259–260 (1964); Cox, Labor Law Preemption Revisited, 85 Harv. L. Rev. 1337, 1346, 1351–1359 (1972). The Act treats state action differently from private action not merely because they frequently take different forms, but also because in our system States simply are different from private parties and have a different role to play.

We do not say that state purchasing decisions may never be influenced by labor considerations, any more than the NLRA prevents state regulatory power from ever touching on matters of industrial relations. Doubtless some state spending policies, like some exercises of the police power, address conduct that is of such "peripheral concern" to the NLRA, or that implicates "interests so deeply rooted in local feeling and responsibility," that pre-emption should not be inferred. *Garmon*, 359 U. S., at 243–244; see also, *e. g.*, *Belknap, Inc.* v. *Hale*, 463 U. S. 491, 498 (1983). And some spending determinations that bear on labor relations were intentionally left to the States by Congress. See *New York Tel. Co.* v. *New York State Labor Dept.*, 440 U. S. 519 (1979). But Wisconsin's debarment rule clearly falls into none of these categories. We are not faced here with a statute that can even plausibly be defended as a legitimate response to state procurement constraints or to local economic needs, or with a law that pursues a task Congress intended to leave to the States. The manifest purpose and inevitable effect of the debarment rule is to enforce the requirements of the NLRA. That goal may be laudable, but it assumes for the State of Wisconsin a role Congress reserved exclusively for the Board.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*