**TEAMSTERS LOCAL 358 and Frank Thompson, Appellants,**

v.

**DES MOINES REGISTER, Appellee.**

No. 88–560.

Supreme Court of Iowa.

April 19, 1989.

Neil A. Barrick of Barrick Law Office, Des Moines, for appellants.

Greg A. Naylor and Eric P. Sloter of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, LAVORATO, and ANDREASEN, JJ.

SCHULTZ, Justice.

This appeal presents the jurisdictional issue of whether federal labor law preempts consideration of a state statute. The plaintiffs claim the statute requires an employer to accept an assignment of an employee's wages for payment of union dues. The trial court dismissed the action based on lack of subject matter jurisdiction because of federal preemption. We affirm the trial court's ruling.

Plaintiff Frank Thompson is a member of the Teamsters Local 358 (Union) which represents employees of the Des Moines Register (Register). In August 1987, Thompson presented a wage assignment to the Register, requesting a portion of his wages be withheld and allocated to the union in payment of his dues. The Register refused to accept the wage assignment. The Union and Register had negotiated the topic of wage assignments, but no provision had been agreed upon and included in the current collective bargaining agreement. In addition, the agreement contained a "zipper" clause which stated that the agreement was intended to be a complete one, disposing of all bargainable issues, and would not be openable on any issue during the life of the agreement. Consequently, the Register maintains it had no obligation to discuss this issue while the agreement was in effect.

On January 7, 1988, the Union and Thompson sought a declaratory ruling by the district court on whether the Register was "obligated to accept an assignment of wages from an employee to an organization which represents the employee in labor relations" pursuant to Iowa Code section 539.4 (1987). The Register filed a motion to dismiss founded on lack of subject matter jurisdiction because of federal preemption. The district court accordingly dismissed plaintiffs' petition, concluding the "[c]ourt lacks jurisdiction of the subject matter of plaintiffs' claim for the reason that the subject matter is under the exclusive jurisdiction of the National Labor Relations Board." This appeal followed.

Section 539.4 provides in relevant part:

No sale or assignment, by the head of the family, of wages ... shall be of any validity whatever unless the same be evidenced by a written instrument, and if married, unless the husband and wife sign and acknowledge the same joint instrument before an officer authorized to take acknowledgments. Provided, however, that no such assignment or order shall be effective or binding upon the employer unless the employer has in writing agreed to accept and pay said assignment or order. *This section shall not apply to a wage assignment by an employee to an organization which represents the employee in labor relations with the employee's employer.*

(Emphasis added.)

The Union interprets the last sentence of section 539.4 to *require* employers to accept wage assignments. The Register, on the other hand, believes this sentence removes entirely wage assignments to unions from the operation of the statute. Although this sentence is ambiguous, we need not interpret the statute. If we accept plaintiffs' interpretation of section 539.4, we conclude that federal preemption deprives the state court of subject matter jurisdiction.

The federal legislation regarding dues checkoff provisions consists solely of 29 U.S.C. section 186(c)(4), requiring an assignment be in writing and that it be irrevocable for no more than a year. There is no provision that directly addresses the issue before us, which is whether an employer must accept wage assignments to the union.

In its motion to dismiss, the Register proposed two theories of federal preemption. First, it asserted that the Union's attempt to unilaterally modify the closed collective bargaining agreement by requiring the acceptance of a dues checkoff clause was a violation of section 158(d) of the Labor Management Relations Act (NLRA). The Register urged that this was an unfair labor practice, the exclusive jurisdiction of which was in the National Labor Relations Board (NLRB). Second, the Register asserted that Congress intended wage assignments to be a topic for bargaining and consequently free from any regulation. Any state regulation would impermissibly intrude into an area of collective bargaining Congress intended to leave to the free play of economic forces.

In the area of labor law, two distinct preemption principles have developed. The first prohibits states from regulating "activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Wisconsin Dept. of Industry v. Gould, Inc.,* 475 U.S. 282, 286, 106 S.Ct. 1057, 1061, 89 L.Ed. 2d 223, 228 (1986). The United States Supreme Court has recognized a second preemption area, the *Machinists* preemption. *Golden State Transit Corp. v. Los Angeles,* 475 U.S. 608, 614, 106 S.Ct. 1395, 1398, 89 L.Ed.2d 616, 623 (1986) (*citing Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976)). This precludes state regulation in areas "that Congress intended to be unregulated." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 749, 105 S.Ct. 2380, 2394, 85 L.Ed.2d 728, 746 (1985).

The Utah court applied the first preemption principle in holding that its state statute, which required the employer to abide by an employee's assignment under penalty of criminal sanctions, was preempted by the NLRA in the case of union dues checkoffs. *State v. Montgomery Ward & Co.,* 120 Utah 294, 302, 233 P.2d 685, 689, *cert. denied,* 342 U.S. 869, 72 S.Ct. 111, 96 L.Ed. 654 (1951). It concluded that when Congress banned the employer's payments to unions of an employee's money, subject to exception under 29 U.S.C. section 186, "there is no room for the States to narrow or enlarge upon the exceptions without conflicting with the policy of Congress." *Id.* at 302, 233 P.2d at 689. Although we agree with the rationale of the Utah court, we believe that the second and newer preemption theory is more appropriate in this case.

The second preemption principle addresses situations involving intended voids in labor regulation. Although the labor-management relationship is regulated by the NLRA, Congress intentionally left cer-

tain areas "to be controlled by the free play of economic forces." *Golden,* 475 U.S. at 614, 106 S.Ct. at 1398, 89 L.Ed.2d at 623 (quoting *NLRB v. Nash–Finch Co.,* 404 U.S. 138, 144, 92 S.Ct. 373, 377, 30 L.Ed.2d 328, 333 (1971)). Thus, a state statute attempting to regulate an area intentionally left open for the parties to negotiate would not merely fill a gap. Rather, it would impermissibly deny a "party to an economic contest a weapon that Congress meant him to have available." Lesnick, *Preemption Reconsidered: The Apparent Reaffirmation of Garmon,* 72 Colum.L.Rev. 469, 478 (1972).

An employer's acceptance of a dues checkoff provision is one such area that Congress intentionally left unregulated. It has been deemed to be a mandatory bargaining issue, i.e. one on which a party is required to bargain in good faith. *E.g., Caroline Farms Div. of Textron, Inc. v. NLRB,* 401 F.2d 205, 210 (4th Cir.1968); *United Steelworkers v. NLRB,* 390 F.2d 846, 849 (D.C.Cir.1967), *cert. denied,* 391 U.S. 904, 88 S.Ct. 1654, 20 L.Ed.2d 419 (1968). Any state regulation requiring an employer to accept a dues checkoff provision would deprive the employer of a bargaining chip that Congress intended be available. This topic was to be left on the bargaining table between the parties, not regulated by state statute. Because the federal regulation intentionally left this area to be controlled by the "free play of economic forces," *Machinists* preemption vests the exclusive subject matter jurisdiction in the NLRB. Consequently, the trial court properly dismissed this action.

AFFIRMED.