ROGERS, Circuit Judge,
dissenting:
Under Executive Order 13201, 2001 WL 169257, a party, and all its subcontractors, contracting with the federal government must provide notice to its employees of their Beck and General Motors rights[1] or risk debarment. The Executive Order thus would regulate activities regarding union-security clauses, an area where the National Labor Relations Board has primary jurisdiction under the National Labor Relations Act (“NLRA”), and it would do so in a manner that imposes a duty on employers that the NLRA, as interpreted by the Board, does not impose. Consequently, it is preempted under San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and I respectfully dissent.
When the Supreme Court held in Wisconsin Department of Industry v. Gould, 475 U.S. 282, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986), that a state statute debarring repeat NLRA offenders from doing business with the State was preempted by the NLRA, the Court explained that Garmon preemption prevents the States from “setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, [and] also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the Act.” Id. at 286, 106 S.Ct. at 1061. Concerned that there not be state standards that would interfere with Congress’ “integrated scheme of regulation,” the Court rejected the notion that “a supplemental remedy is different in kind from those that may be ordered by the Board” and would do no harm. Id. at 287, 106 S.Ct. at 1061. The focus, the Court explained, was on the activities, not the method of regulation. Id.
Union-security clauses and activities related to them fall squarely within the regulatory scope of the NLRA. See §§ 7, 8(a)(3), (b)(2), (f), 29 U.S.C. §§ 157, 158(a)(3), (b)(2), (f). The Supreme Court acknowledged that “federal concern is pervasive and its regulation complex” in this area, Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Lockridge, 403 U.S. 274, 296, 91 S.Ct. 1909, 1923, 29 L.Ed.2d 473 (1971), and this court observed in Thomas v. NLRB, 213 F.3d 651 (D.C.Cir.2000), that, as a consequence, “[a]ll the details necessary to make the rule of Beck operational were left to the Board, subject to the very light review authorized by Chevron[, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)].” Id. at 657 (quoting Int’l Ass’n of Machinists & Aerospace Workers v. NLRB, 133 F.3d 1012, 1016 (7th Cir.), cert. denied sub nom. Strang v. *368 NLRB, 525 U.S. 813, 119 S.Ct. 47, 142 L.Ed.2d 36 (1998)).
Executive Order 13201, 2001 WL 169257, by imposing a requirement on employers about what they must say in the context of unionsecurity clauses and establishing remedies for noncompliance, would shift these decisions away from the Board. This runs afoul of Garmon’s recognition of Congress’ choice of the Board to implement the NLRA. See Bldg. & Constr. Trades Council v. Associated Builders & Contractors, 507 U.S. 218, 225, 113 S.Ct. 1190, 1194-95, 122 L.Ed.2d 565 (1993); Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 748-49 & n. 26, 105 S.Ct. 2380, 2394 & n. 26, 85 L.Ed.2d 728 (1985). The conflict that Garmon preemption seeks to avoid is evident by comparing the regulatory scheme envisioned in Executive Order 13201, 2001 WL 169257, with its posting requirement on penalty of debarment, and an employer’s right under the NLRA, as interpreted by the Board in Rochester Manufacturing Co., 323 N.L.R.B. 260, 1997 WL 113885 (1997), to speak or not to speak about Beck rights. In rejecting the General Counsel’s position that the employer’s failure to advise employees of Beck rights was an unfair labor practice, the Board in Rochester Manufacturing determined that under the NLRA the employer has no duty to inform its employees of their rights under Beck, declining to hold that an employer had an “affirmative obligation,” comparable to the union’s duty of fair representation, “to spell out for employees the precise extent of the union-security obligation.” Rochester Mfg., 323 N.L.R.B. at 262. Executive Order 13201, 2001 WL 169257, on the other hand, would force employers to surrender one of the speech options left open by the Board in Rochester Manufacturing or risk imposition of a draconian penalty, in conflict with the primary jurisdiction of the Board to decide whether an activity is lawful under §§ 7 and 8 of the NLRA, regardless of whether the Board has exercised its jurisdiction. See Garmon, 359 U.S. at 245, 79 S.Ct. at 779-80; Chamber of Commerce v. Reich, 74 F.3d 1322, 1337 n. 10 (D.C.Cir.1996); see also Washington Serv. Contractors Coalition v. District of Columbia, 54 F.3d 811, 815-16 (D.C.Cir.1995). As the plaintiffs point out, the court has acknowledged the broad scope of preemption under Garmon, see Chamber of Commerce, 74 F.3d at 1334, and has rejected a crabbed conception of “consistency” and thus any suggestion that the employer’s foregoing one of two permissible options under Executive Order 13201, 2001 WL 169257 creates no Garmon conflict.
The court rejects this approach relying on International Longshoremen’s Association v. Davis, 476 U.S. 380, 394-98, 106 S.Ct. 1904, 1914-16, 90 L.Ed.2d 389 (1986). Opinion at 363-364. Because the Board rejected the position that non-posting of Beck rights was an unfair labor practice, it follows, the court says, that there is no basis to suggest that non-posting is “arguably” prohibited, for the Board in Rochester Manufacturing “has decided that the activity is not prohibited.” Opinion at 364. But this is a sleight of hand, for the court’s approach ignores the conflict that Executive Order 13201, 2001 WL 169257 would create with the regulatory scheme for union-security clauses that the Board has established, namely a scheme in which the employer may or may not inform its employees about Beck rights.
In rejecting the plaintiffs’ alternative claim that Executive Order 13201, 2001 WL 169257 is preempted because it regulates activity protected or arguably protected by § 8(c), the court focuses on the hole in the donut and ignores the donut itself, stating that “[flitting a Garmon claim under the language of § 8(c) is awkward.” Opinion at 364. The Supreme *369 Court in construing § 8(c) has adhered to the rationale of Garmon preemption, that “[t]o leave the States [and non-Board actors] free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law.” Garmon, 359 U.S. at 244, 79 S.Ct. at 779. Thus, in Linn v. United Plant Guard Workers, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), the Supreme Court held that a state defamation statute was preempted in labor relations areas except where actual malice is found. Id. at 61, 86 S.Ct. at 662. The Court explained that “the enactment of § 8(c) manifests a congressional intent to encourage free debate on issues dividing labor and management,” and that limiting the applicability of the state statute to cases of actual malice “guard[ed] against abuse of libel actions and unwarranted intrusion upon free discussion envisioned by the Act.” Id. at 62, 65, 86 S.Ct. at 662-63, 664.
The court finds ambiguity in Linn, Opinion at 365 & n.l, notwithstanding the fact that the Linn Court was clear that § 8(c) reflected Congress’ goal of promoting robust and wide-open debate in the context of labor relations and that the application of state libel laws would interfere with this goal. See Linn, 383 U.S. at 62, 86 S.Ct. at 662-63; see also id. at 58 n. 3, 86 S.Ct. at 661 n. 3. While not expressly stating that Garmon preemption applied because § 8(c) protects an employer’s free speech lights, this reasoning is implicit in Linn. To the extent there may be doubt, the Supreme Court has plainly spoken elsewhere that § 8(c) protects the employer’s First Amendment right to express its views about unionism. See NLRB v. Gissel Packing Co., 395 U.S. 575, 617-18, 89 S.Ct. 1918, 1941-42, 23 L.Ed.2d 547 (1969). That Linn was only partially relying on § 8(c) has not deterred the Supreme Court from applying Linn to labor disputes “in a context where the policies of the federal labor laws leading to protection for freedom of speech are significantly implicated.” Old Dominion Branch No. 496 v. Austin, 418 U.S. 264, 279, 94 S.Ct. 2770, 2778, 41 L.Ed.2d 745 (1974); see id. at 271-73, 276-79, 94 S.Ct. at 2774-76, 2777-79. In sum, the hole - arising from the fact that the language of § 8(c) protects employers’s speech rights from the NLRA, see Opinion at 364-365 does not eviscerate the donut, which consists of the broad protection of employer speech under § 8(c), as is reflected in the Board’s determination that as to Beck rights the employer has no duty under the NLRA to speak or not to speak.
Assuming protection of employer speech rights under § 8(c), the court concludes that Executive Order 13201, 2001 WL 169257’s posting requirement is not unlike other federal posting requirements imposed on employers. Opinion at 365 (citing Nat’l Elec. Mfrs. Ass’n v. Sorrell, 272 F.3d 104, 113-16 (2d Cir.2001); Lake Butler Apparel Co. v. Sec’y of Labor, 519 F.2d 84, 89 (5th Cir.1975)). .The plaintiffs do not claim that the employer’s speech rights under § 8(c) are absolute; to the contrary. Appellees’ Br. at 29. But Executive Order 13201, 2001 WL 169257 is different from the posting requirements cited by the court. Unlike cases not within the regulatory authority of the Board where impositions on the employer’s speech rights have been upheld, Opinion at 365, the courts have recognized that the implementation of Beck and General Motors rights is a matter “left to the Board.” See Thomas, 213 F.3d at 657. The Board in Rochester Manufacturing preserved the employer’s right under the NLRA to speak or not to speak on this issue. Like the state defamation law preempted in Linn, Executive Order 13201, 2001 WL 169257 would pun *370 ish speech rights that Congress has protected under the NLRA, as interpreted by the Board, and thus would create unacceptable conflict with the Board’s primary responsibility for activities relating to union-security clauses. Accordingly, I respectfully dissent.

. Communications Workers v. Beck, 487 U.S. 735, 754-63, 108 S.Ct. 2641, 2653-58, 101 L.Ed.2d 634 (1988); see also NLRB v. Gen. Motors Corp., 373 U.S. 734, 739-45, 83 S.Ct. 1453, 1457-61, 10 L.Ed.2d 670 (1963).