JOURNAL ENTRY AND OPINION
Appellant, Randy J. Vitale, is appealing the trial court's decision granting summary judgment in favor of appellee, Modern Tool and Die Company, Inc. (MTD). For the following reasons, we affirm in part and reverse in part.
Appellant worked as shipping and inventory supervisor at MTD. He supervised two inventory control attendants, Ralph Liebenguth and Charlie Liebenguth. Geib, the operations manager, felt that the Liebenguths sabotaged the operations by deliberately putting more products on the truck than stated on the load sheets. Appellant deposed that this happened only once and he could not prove it was deliberate.
According to appellant, Geib was adamant that he wanted to get rid of the Liebenguths. Geib told appellant on three or four occasions to write up the Liebenguths, for anything you have to. The inventory control attendants were union members and could only be fired for just cause. Although Geib did not directly tell appellant to fabricate charges, Geib made it clear to me that he did not care whether the charges against the Liebenguths were accurate.
Appellant felt the Liebenguths had not violated work rules. Ralph Liebenguth often called appellant derogatory names, as part of shop talk or jest. Appellant was aware that truck drivers did not like going to the West 150th plant because of Ralph and Charlie. Appellant believed he fixed the problem by having the truck drivers deal only with him. Geib deposed that he received complaints that the Liebenguths harassed other employees, stood around doing nothing and impeded the efforts of truck drivers.
On February 18, 1998, Ralph Liebenguth called appellant, spineless. Appellant said, here's your spine, and grabbed his crotch. Appellant averred that the gesture was a joke, and such behavior was typical and tolerated by management. Inventory control attendant Pam Goldsmith and the union vice-president averred that off-color antics were common in the plant and tolerated by management.
Charlie's daughter, Mary Connor, was in the area when appellant made the gesture. Mary Connor filed a complaint with the company for sexual harassment.
The next day, appellant met with Geib and other management employees. Geib fired appellant, stating, It's the gesture, the law and I told you to write these guys up and you wouldn't write these guys up. The rumor in the plant was that appellant was fired for sexual harassment. While looking for other work, he was forced to disclose that he was terminated amidst allegations of sexual harassment.
Richard Geib deposed that appellant was fired for unprofessional behavior which violated sexual harassment laws. Geib felt appellant harassed Ralph. He never asked Ralph if he was offended by the gesture. Employee Pam Goldsmith averred that Ralph was clearly not offended by the gesture.
It was ultimately determined that Mary Connor lied in the grievance, as she could not have seen the gesture from her position on the floor. In the grievance, the company maintained that appellant did not sexually harass anyone.
Geib stated he talked to appellant and Pam Goldsmith before he fired appellant. Pam Goldsmith averred that Geib did not speak to her until after he fired appellant. Geib told her that the real reason he fired appellant was because appellant did not write up the Liebenguths.
Appellee maintains that appellant could have written up Ralph on February 18, 1998 for interfering with a supervisor's job and abusive language toward a supervisor. Geib stated that appellant told him that Ralph used cuss words and that appellant felt intimidated by Ralph. Appellant denied that any cuss words were used or that he felt intimidated.
Appellant's sole assignment of error states:
 THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY GRANTING SUMMARY JUDGMENT UPON ALL CLAIMS AGAINST PLAINTIFF-APPELLANT AND IN FAVOR OF DEFENDANT-APPELLEE.
Summary judgment is appropriate upon the demonstration that: (1) there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. See Civ.R. 56(C), Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. Summary judgment is proper against a party who fails to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. Celotex Corp. V. Catrett (1986), 477 U.S. 317, 106 S.Ct. 2548,91 L.Ed.2d 265. The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Id.
We will first consider appellee's argument that this case is preempted by federal law. State and local regulation of activities that are protected by S7 of the [NLRA], or constitute an unfair labor practice under S8 is prohibited. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 244, 79 S.Ct. 773, 779,3 L.Ed.2d 775, 782; J.A. Croson Co. v. J.A. Guy, Inc. (1998), 81 Ohio St.3d 346,351. Garmon pre-emption prohibits even regulation of activities that the National Labor Relations Act only arguably protects or prohibits. See Wisconsin Dept. of Industry v. Gould, Inc. (1986), 475 U.S. 282, 286; 106 S.Ct. 1057, 1061;89 L.Ed.2d 223, 228; J.A. Croson, supra. Although supervisors are not themselves protected by the NLRA, an employer violates the NLRA when it discharges a supervisor "for refusing to commit an unfair labor practice," such as refusing to fire an employee for union activity. See Pioneer Hotel, Inc. v. N.L.R.B. (C.A.D.C. 1999),182 F.3d 939, 942.
It is alleged that appellant was fired for refusing to fabricate violations of shop rules by union employees. Appellant was fired for refusing to violate the collective bargaining agreement, not for refusing to violate a provision of the Labor Management Relations Act, Title 29 U.S. Code S158(a).
A state court may hear a cause of action for violation of the collective bargaining agreement, but must apply federal law. Hamrick v. Goodyear Aerospace Corp. (1987), 37 Ohio App.3d 124,125; Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co., Local 174 (1962), 369 U.S. 95, 82 S.Ct. 571,7 L.Ed.2d 593.
The trial court had jurisdiction over appellant's claims, but had to apply federal law for determining whether a breach of the collective bargaining agreement would occur due to the alleged actions of the employer. The collective bargaining agreement would obviously be breached by fabricating disciplinary violations.
Next, we must determine whether there was sufficient evidence to show wrongful termination. Appellant was an at-will employee. In general, an at-will employee can be terminated any time, with or without just cause. Wright v. Honda of Am. Mfg. Inc. (1995),73 Ohio St.3d 571, 574. Termination of an at-will employee is wrongful if the termination was against a clear public policy. Painter v. Graley (1994), 70 Ohio St.3d 377. A clear public policy can be based on legislation and/or common law. Painter, supra. Common law has established a public policy against tortious interference with contract and breach of contract. See Smith v. Klein(1985), 23 Ohio App.3d 146. Discharge of the supervisor for refusing to interfere with or breach the collective bargaining agreement is against public policy established by common law.
The question is whether there was sufficient evidence to show that appellant was terminated for refusing to falsely write-up the employees. Taking the evidence in the light most favorable to appellant, Geib made it clear to appellant that Geib did not care whether the Liebenguths actually violated a plant rule, he just wanted them written up. The Liebenguths did not commit any violations of plant rules. Ralph did not swear or intimidate appellant during the February 18, 1998 incident, and could not have been written up for those reasons. Appellant deposed that on February 18, Ralph went to get coffee after the shift was over. Based on this evidence, reasonable minds could find that appellant was wrongfully terminated for refusal to fabricate violations by union employees.
Appellee asserts that it fired appellant for making an obscene and unprofessional gesture towards a subordinate. However, there was evidence from which reasonable minds could conclude that appellee fired appellant for refusing to write up the Liebenguths. Pam Goldsmith deposed that Geib told her the reason he fired appellant was because he did not write up the Liebenguths, and not because of the gesture.
Appellant also argues it is against public policy for an employee to be fired based on a false claim of sexual harassment. According to appellant, allowing such terminations would diminish the effect of anti-discrimination laws. It is not wrongful to discharge an at-will employee for a criminal indictment, even if the employee is never found guilty. See Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, 101. Additionally, it is not against public policy for an employer to discharge an employee for unprofessional or inappropriate behavior, such as making a crude gesture. While it is unfair for an employer to fire an employee for behavior that has always been permitted, it is not against public policy.
We must also determine whether there was sufficient evidence to prove appellant's claim of defamation. Appellant must show that appellee made a false statement concerning appellant, and was at least negligent in publishing it. Lansdowne v. Beacon Journal Pub. Co.(1987), 32 Ohio St.3d 176. A communication made in good faith on a matter of common interest between two employees concerning a third employee, is protected by qualified privilege. Hanley v. Riverside Methodist Hospital (1991), 78 Ohio App.3d 73; Gray v. Allison Division of General Motors Corporation (1977), 52 Ohio App.2d 348. The statement must be limited in scope to the common purpose, and made to proper parties only. Hanley, supra. Once defendant demonstrates the existence of the qualified privilege, plaintiff can prevail only upon a showing of actual malice. Id. at 81.
A statement is made with actual malice if the speaker knew it was false or acted with reckless disregard to whether it was false or not. Kremer v. Cox (1996), 114 Ohio App.3d 41; Patio World v. Better Business Bureau Inc. (1989), 43 Ohio App.3d 6, 9. The plaintiff must show that defendant was highly aware of the probability of falsity. Jacobs v. Frank (1991), 60 Ohio St.3d 111,115. Reckless disregard for truth is more than mere negligence. Kremer, supra.
 There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.
Id.at 64. The subjective belief of speaker must be considered in determining whether a statement was made with actual malice. Lakota Loc. School Dist. Bd. of Edn. v. Brickner (1996),108 Ohio App.3d 637; Varanese v. Gall (1988), 35 Ohio St.3d 78, 80.
Geib said in front of appellant, the personnel director, and appellant's immediate supervisor, that the reason for appellant's termination was, It's the gesture, it's the law. The statement was protected by a qualified privilege, as it was a matter of common interest, and made to proper parties only.
Appellant asserts that Geib knew appellant did not violate sexual harassment laws, because he was told by Goldsmith that Connors did not see the gesture. Appellant told Geib the gesture was not directed towards Mary Connors. Geib deposed that he felt appellant was sexually harassing Ralph. Geib never asked Ralph whether he was offended by the gesture. In order to constitute sexual harassment, the gesture must be objectively and subjectively offensive. See Faragher v. Boca Raton (1998), 524 U.S. 775,118 S.Ct. 2275, 141 L.Ed.2d 662. While Geib may have been negligent in failing to investigate the facts and the law, the evidence does not show that Geib was highly aware of a probability that sexual harassment did not occur. In fact, the evidence indicates that Geib subjectively believed that appellant's conduct was a violation of sexual harassment law.
Appellant asserts that he is forced to tell prospective employers that he was terminated amid charges of sexual harassment. It is true that appellant was terminated amid charges of sexual harassment. Truth is a complete defense to defamation. Ohio State Home Serv., Inc. v. Better Business Bur. of Akron, Inc. (1993),89 Ohio App.3d 732, 736.
Reasonable minds could only conclude that appellee did not make defamatory statements about appellant. Reasonable minds could reach different conclusions as to whether appellant was wrongfully discharged.
Accordingly, this assignment of error is sustained in part and overruled in part.
The decision granting summary judgment to appellee on appellant's wrongful discharge claim is reversed. Otherwise, the decision of the trial court is affirmed. This case is remanded to the trial court for further proceedings consistent with this opinion.
It is ordered that appellant recover of appellees his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _______________________________________ ANN DYKE ADMINISTRATIVE JUDGE
PATTON, J., CONCURS. SWEENEY, J., CONCURS IN PART AND DISSENTS IN PART (SEE ATTACHED CONCURRING AND DISSENTING OPINION)
 CONCURRING AND DISSENTING IN PART