**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3166
_____

ASSOCIATED BUILDERS AND CONCTRATORS INC
NEW JERSEY CHAPTER; GMP CONTRACTING LLC;
ALPINE PAINTING & SANDBLASTING
CONTRACTORS; ALPER ENTERPRISES INC;
RON VASILIK
Appellants

v.

CITY OF JERSEY CITY, NEW JERSEY;
HUDSON COUNTY BUILDING AND CONSTRUCTION
TRADES COUNCIL (Intervenor in District Court)
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 2-14-cv-05445)
Honorable Susan D. Wigenton, District Judge
_____

Argued: June 8, 2016

Before: CHAGARES, KRAUSE, and SCIRICA, *Circuit Judges*

(Opinion Filed: September 12, 2016)

Russell J. McEwan, Esq. (Argued)
Ivan R. Novich, Esq.
Littler Mendelson
1085 Raymond Boulevard
One Newark Center, 8th Floor
Newark, NJ 07102
*Attorneys for Plaintiff-Appellants*

Zahire D. Estrella, Esq. (Argued)
Jersey City Law Department
280 Grove Street
City Hall
Jersey City, NJ 07302
*Attorney for Defendant-Appellee*

Raymond G. Heineman, Esq. (Argued)
Seth Ptasiewicz, Esq.
Kroll Heineman
99 Wood Avenue South
Metro Corporate Campus I, Suite 307
Iselin, NJ 08830
*Attorney for Defendant-Intervenor-Appellee*

_____

OPINION OF THE COURT
_____

KRAUSE, Circuit Judge.

In an effort to stimulate economic development, Jersey City, New Jersey offers tax exemptions and abatements to private developers of projects in certain designated areas. Under a law passed by the City, however, those tax benefits are conditioned on the developers' entry into agreements with labor unions that bind the developers to specified labor practices. Appellants in this case, various employers and a trade group, sought to challenge that law on the grounds that it is preempted by the National Labor Relations Act ("NLRA") and Employee Retirement Income Security Act ("ERISA") and barred by the dormant Commerce Clause of the U.S. Constitution. The District Court dismissed Appellants' complaint, concluding that Jersey City acts as a market participant, not a regulator, when it enforces the law, and therefore that Appellants' NLRA, ERISA, and dormant Commerce Clause claims were not cognizable. Because we conclude that Jersey City was acting as a regulator in this context, we will reverse and remand for those claims to be reinstated.

**I.**

**A.**

New Jersey's Long Term Tax Exemption Law and Five-Year Exemption and Abatement Law authorize local governments in the State to provide tax exemptions and abatements to private developers of projects within areas the locality has marked for redevelopment. *See* N.J. Stat. Ann.

§§ 40A:20-1 to -22; 40A:21-1 to -21.[1] The exemptions on such Tax Abated Projects significantly reduce developers' property tax burden, although developers may still be required to make payments in lieu of property taxes. *See Id.* § 40A:21-10.

With this authorization, Jersey City offers tax exemptions to private developers on certain redevelopment projects. However, Section 304 of Jersey City's Municipal Code (the "Ordinance") imposes certain requirements on developers of "Public Construction Project[s]," which are projects costing at least $5,000,000 (excluding land acquisition costs) and "entered into by the City using public funds," and "Tax Abated Project[s]," which are projects costing at least $25,000,000 (excluding land acquisition costs) and funded only with private investment.[2] Jersey City, N.J.,

---

[1] Under the relevant New Jersey law, abatements and exemptions are flip sides of the same coin. An "abatement" is "that portion of the assessed value of a property as it existed prior to construction, improvement or conversion of a building or structure thereon, which is exempted from taxation pursuant to" the Five-Year Exemption and Abatement Law, while an "exemption" is "that portion of the assessor's full and true value of any improvement, conversion alteration, or construction not regarded as increasing the taxable value of a property pursuant to" that law. N.J. Stat. Ann. § 40A:21-3(a), (l). For ease of reference, we will use the term "exemption" in this opinion other than in proper names and quoted material.

[2] Neither the City nor intervenor Hudson County Building and Construction Trades Council disputes that Tax

Mun. Code § 304-33(8) to -33(9) ("Mun. Code"); *see Associated Builders & Contractors, Inc. v. City of Jersey City*, 2:14-cv-05445, 2015 WL 4640600, at *1-2 (D.N.J. Aug. 3, 2015); Compl. ¶ 9; Appellants' Br. at 34.

Specifically, the Ordinance requires that, prior to commencing work on construction projects exceeding these thresholds, developers of such projects must execute project labor agreements ("PLAs"), unless the City's Business Administrator determines that a PLA is not appropriate in light of the "nature, size, and complexity of the project." Mun. Code § 304-33(7), 34(1). PLAs require developers of Tax Abated Projects to abide by a pre-hire collective bargaining agreement that will cover all employees for the

Abated Projects governed by the Ordinance are projects funded only with private investment. At the same time they have offered no explanation of how the City can require contractors to enter into a project labor agreement ("PLA") with respect to anything other than projects that use public funds when the authorizing statute provides only that "[a] public entity may include a [PLA] in a public works project on a project-by-project basis." N.J. Stat. Ann. § 52:38-3; *see Tormee Constr., Inc. v. Mercer Cty. Improvement Auth.*, 669 A.2d 1369, 1372 (N.J. 1995) (holding, prior to the enactment of § 52:38-3, that a government entity did not have the authority to require contractors to enter into PLAs that would require the use of one of two unions on "routine [public] construction projects"); *George Harms Constr. Co. v. N.J. Tpk. Auth.*, 644 A.2d 76, 94 (N.J. 1994) (holding that a government entity could not require contractors to enter into PLAs requiring the use of a particular union in the absence of express legislative authority).

5

duration of the Tax Abated Project and that also will bind the developer's contractors and subcontractors. *Id.* § 304-33(7), -33(9), -34(1), -35(3). Because a PLA, by definition, is entered into with a labor union, it requires that an employer negotiate with a labor union and that all employees be represented by that labor union as part of the negotiations— even if the developers, contractors, and subcontractors do not ordinarily employ unionized labor and the employees are not union members. *See* Compl. ¶¶ 16, 31. The PLAs required by the Ordinance also specify that "there will be no strikes, lock-outs, or other similar actions" and that the developer and union will agree to procedures to resolve any labor disputes. Mun. Code § 304-35(1) to -35(2). Under the Ordinance, with limited exceptions, each contractor and subcontractor working on a Tax Abated Project must have "a local federally registered apprenticeship program," and twenty percent of all labor hours must be performed by apprentices who are City residents. *Id.* § 304-35(4) to -35(5).

Having accepted the obligations of a PLA, a developer who fails to fulfill them does so at its peril. Among other significant consequences it can impose, the City may "[s]uspend the tax abatement" until the developer complies with the PLA, during which time the City can assess three times the amount of conventional real estate taxes. And if the developer fails to cure within six months, the City may terminate the exemption. *Id.* § 304-37(2). The City may also collect liquidated damages that include, among other things, a payment of two percent of the annual payment in lieu of taxes for each month a developer, contractor, or subcontractor is in material breach. *Id.* Further, if a developer estimates that the cost of a project that received a tax exemption will be less than $25,000,000 such that a PLA is not required, but the

6

total cost meets or exceeds that threshold upon completion, then the developer must pay significantly increased payments in lieu of taxes. *Id.* § 304-37(3).

**B.**

Appellant Associated Builders and Contractors, Inc., New Jersey Chapter ("ABC-NJ") is a non-profit organization that "advocat[es] for open competition in the award of construction contracts based on merit, and regardless of the bidding contractor's labor affiliation." Compl. ¶ 2. Appellants GMP Contracting LLC, Alpine Painting & Sandblasting Contractors, and Alper Enterprises, Inc., are New Jersey businesses and members of ABC-NJ, and Appellant Ron Vasilik is an employee of Alpine.[3] Together, these Appellants allege that they and other members of ABC-NJ have been "deterred" from bidding on projects covered by the Ordinance for various reasons, including because they have no established relationships with any union and have never worked under PLAs; they would have to hire employees through a union hiring hall and not in accordance

---

[3] GMP, Alpine, Alper, and Vasilik have standing to challenge the Ordinance based on their own alleged injuries. *See Nat'l Assoc. for the Advancement of Multijurisdiction Practice v. Castille*, 799 F.3d 216, 218 n.1 (3d Cir. 2015). ABC-NJ, on the other hand, has associational standing to challenge the Ordinance because some of its members allegedly were injured and therefore would otherwise have standing to sue; the interests ABC-NJ seeks to protect are germane to its purpose; and the claims asserted and the relief sought do not require the participation of ABC-NJ's individual members. *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 365 (3d Cir. 2015).

with their own standards; they would be restricted to hiring only subcontractors that also comply with PLAs; and they would have to force their employees to comply with an agreement negotiated by a union regardless of their employees' desires. Compl. ¶ 31.

Appellants sued to enjoin enforcement of the Ordinance in August 2014, bringing five counts. Count I alleges that the Ordinance is preempted by sections 7 and 8 of the NLRA, 29 U.S.C. §§ 157-158. Count II alleges that the Ordinance violates the dormant Commerce Clause and Privileges and Immunities Clause of the U.S. Constitution because the Jersey City apprenticeship requirement unduly favors in-state individuals and denies out-of-state individuals access to the privileges and immunities of in-state apprentices. Count III alleges that the apprenticeship requirement is also preempted by ERISA, 29 U.S.C. § 1144(a). Count IV alleges violations of the Due Process and Equal Protection Clauses of the U.S. and New Jersey constitutions. Finally, based on the alleged constitutional violations, Count V asserts a claim under 42 U.S.C. § 1983.

In the District Court, the Hudson County Building and Construction Trades Council ("Council") filed a motion to intervene, which was granted. The Council, joined by the City, filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing among other things, that the NLRA, dormant Commerce Clause, and ERISA do not apply because the City imposes and enforces the PLA requirement in its capacity as a market participant, not a regulator.[4] The Council also argued that

---

[4] The City joined in the motion to dismiss, but because the City had already filed an answer, the City's motion was

8

none of Appellants had standing to bring a Privileges and Immunities Clause claim because none of them are from outside New Jersey. Appellants opposed the motion and also sought to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a) that would have clarified some of the allegations and added an out-of-state plaintiff in an effort to cure the alleged standing deficiency.

The District Court determined that the City enforces the Ordinance as a market participant, thus rendering the NLRA, ERISA, and Commerce Clause claims not cognizable. *See Associated Builders*, 2015 WL 4640600, at \*5-7. Having rejected the remaining claims, the District Court granted the 12(b)(6) and 12(c) motions in full and denied ABC-NJ's Rule 15(a) motion for leave to amend. On appeal, however, Appellants challenge only the District Court's ruling on the NLRA, ERISA, and dormant Commerce Clause claims, *see* Oral Arg. Tr. at 16 (argued June 8, 2016), thus presenting only the question of whether the City is properly deemed as a market participant, in which case Appellants' claims under the NLRA, ERISA, and dormant Commerce Clause are not viable, or whether the City instead enforces the Ordinance in its capacity as a regulator, in which case the Ordinance might be preempted under the NLRA or ERISA or forbidden by the dormant Commerce Clause.

---

treated as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

9

## II.[5]

We review dismissals for failure to state a claim and grants of motions for judgment on the pleadings *de novo*, taking all factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (setting forth the standard of review for motions to dismiss); *Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989) (equating the standard of review for motions to dismiss and motions for judgment on the pleadings).

## III.

The NLRA, ERISA, and the dormant Commerce Clause generate distinct doctrines, but by virtue of the Supremacy Clause, these statutes and this constitutional provision will supersede state or local law in certain circumstances. The NLRA preempts any state or local law that regulates conduct falling within sections 7 or 8 of the NLRA—sections that safeguard an employee's right to join, or refrain from joining, a labor union, 29 U.S.C. § 157, and that render it an unfair labor practice for an employer to "support" a labor organization through "financial" or other means or to "refuse to bargain collectively with the representatives of his employees," *id.* § 158(a)(2), (5). *See generally San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959). In addition, recognizing that Congress prescribed a certain balance of

---

[5] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

bargaining power between employers and employees, the Supreme Court has held that the NLRA preempts state and local laws that strip employers or employees of certain "self-help" economic tools like strikes and lockouts. *See Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wis. Emp't Relations Comm'n*, 427 U.S. 132, 148-51 (1976). ERISA preempts "any and all State laws insofar as they . . . relate to any employee benefit plan"—that is, a plan providing health insurance, disability benefits apprenticeships, a pension, or other benefits. *See* 29 U.S.C. §§ 1002, 1003(a), 1144(a). And the dormant Commerce Clause precludes states from enacting "regulatory measures designed to benefit in-state economic interests by burdening out of state competitors." *Dep't of Revenue v. Davis*, 553 U.S. 328, 338 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)).

Despite their differences, the NLRA and the dormant Commerce Clause—and, we will assume, for today's purpose, ERISA[6]—share the same threshold requirement

---

[6] The parties assume that the market participant exception applies in the ERISA context. Other Circuits have applied the exception in this context, *see Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1023 (9th Cir. 2010); *Cardinal Towing & Auto Repair, Inc. v. City of Bedford*, 180 F.3d 686, 695 (5th Cir. 1999), but we have yet to do so. We need not decide today whether the market participant exception limits ERISA preemption, for as we explain, the City does not act as a market participant in offering tax abatements. *See Keystone Chapter, Associated Builders & Contractors, Inc. v. Foley*, 37 F.3d 945, 955 n.15 (3d Cir. 1994) (declining to decide the "novel" question of

11

before their constraints are triggered: that the allegedly unlawful act by the state or local government be *regulatory* in nature. If a state or local government is acting as a market participant pursuant to a proprietary interest, it is not so constrained by these federal laws or by the relevant preemption doctrines. *See generally White v. Mass. Council of Constr. Emp'rs, Inc.*, 460 U.S. 204 (1983) (Commerce Clause); *Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.* (*Bos. Harbor*), 507 U.S. 218 (1993) (NLRA); *Tri-M Grp., LLC v. Sharp*, 638 F.3d 407, 421 & n.23 (3d Cir. 2011) (Commerce Clause); *Amalgamated Transit Union, Div. 819 v. Byrne*, 568 F.2d 1025 (3d Cir. 1977) (en banc) (NLRA).

The market participant exception to these doctrines is rooted in the principle that a government, just like any other party participating in an economic market, is free to engage in the efficient procurement and sale of goods and services. *See Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 70 (2008); *see also Bos. Harbor*, 507 U.S. at 228-30; *Reeves, Inc. v. Stake*, 447 U.S. 429, 437-40 (1980). Thus, when a government "acts as a 'market participant with no interest in setting policy,' as opposed to a 'regulator,' it does not offend" federal law. *Brown*, 554 U.S. at 70 (quoting *Bos. Harbor*, 507 U.S. at 229).

Our Circuit has developed a two-part test for determining whether a state or locality acts as a market

---

whether the market participant exception applies to ERISA preemption because the state was not acting as a market participant in any event).

participant.[7] First, we ask whether "the challenged funding condition"—here, the Ordinance—"serve[s] to advance or preserve the state's proprietary interest in a project or transaction, as an investor, owner, or financier." *Hotel Emps. & Rest. Emps. Union, Local 57 v. Sage Hosp. Res., LLC*, 390 F.3d 206, 216 (*Sage*) (3d Cir. 2004). Second, we ask whether "the scope of the funding condition [is] 'specifically tailored' to the proprietary interest," or, put another way, whether the action is so broad as to be considered, in effect, regulatory. *Id.* (quoting *Bos. Harbor*, 507 U.S. at 232); *see also Wis. Dep't of Indus., Labor & Human Relations v. Gould Inc.*, 475 U.S. 282, 291 (1986). Only if both conditions are met is a government acting as a market participant. *Sage*, 390 F.3d at 216.[8]

---

[7] Under our precedent, the jurisprudence defining market participation in the NLRA and Commerce Clause contexts is identical. *See, e.g.*, *Tri-M Grp.*, 638 F.3d at 421 (borrowing market participant concepts from the NLRA context to inform the inquiry in a Commerce Clause case). While we have not opined on the question and need not do so today, *see supra* note 6, other Circuits have concluded that the same jurisprudence defines "market participation" in the ERISA context as well, even if their tests differ from ours. *See, e.g.*, *Johnson*, 623 F.3d at 1023; *Cardinal Towing*, 180 F.3d at 695.

[8] In contrast, the Seventh Circuit has held that a governmental action need not be either proprietary or regulatory and that the NLRA forbids only actions that are regulatory; in other words, even if a government is not acting as a proprietor, the action might fall outside of the ambit of

13

We resolve this case at the first step of the *Sage* test, for we conclude that the City lacks a proprietary interest in Tax Abated Projects. The Supreme Court has recognized a government's proprietary interest in a project when it "owns and manages property" subject to the project or it hires, pays, and directs contractors to complete the project, *see Bos. Harbor*, 507 U.S. at 221, 227; when it provides funding for the project, *see, e.g.*, *United Bldg. & Constr. Trades Council of Camden Cty. v. City of Camden*, 465 U.S. 208, 221 (1984); *White*, 460 U.S. at 214-15; *Sage*, 390 F.3d at 216-17; or when it purchases or sells goods or services, *see Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 592-93 (1997). But this case fits none of these categories. Instead, Appellees argue, and the District Court agreed, that the City has a proprietary interest in enforcing the Ordinance because "the tax abatement functions as a subsidy that finances or invests in each project." *Associated Builders*, 2015 WL 4640600, at *5.

---

the NLRA (and, presumably, that of ERISA and the dormant Commerce Clause). *See N. Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin*, 431 F.3d 1004 (7th Cir. 2005). Taking yet a different tack, the Ninth Circuit holds that a government acts as a market participant when it acts with a proprietary interest *or* when its act is not narrowly tailored—that is, that it meets either prong of our *Sage* test. *See Johnson*, 623 F.3d at 1024. These cases have no bearing on our analysis, for we are bound by our own precedent in *Sage*, which provides that a government can act either in a regulatory capacity or as a market participant and that it acts as a market participant only when its actions are specifically tailored to a proprietary interest. 390 F.3d at 216.

14

Appellees' argument, however, has been rejected outright by the Supreme Court. In *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, the Supreme Court confronted the question of whether the dormant Commerce Clause was violated by a Maine statute that provided "general exemption from real estate and personal property taxes for 'benevolent and charitable institutions incorporated' in the State," but provided a more limited or no tax benefit to charities that principally benefitted residents of other states. *Camps Newfound*, 520 U.S. at 568 (quoting Me. Rev. Stat. Ann. tit. 36, § 652(1)(A)(1) (Supp. 1996)). The Court held that Maine was not acting as a market participant when it gave tax breaks to charities, rejecting the argument that the tax exemption "should be viewed as . . . a governmental 'purchase' of charitable services" that gave the State a proprietary interest in charities receiving the exemption. *Id.* at 588-89. Although the Court observed that a tax exemption may have "the purpose and effect of subsidizing a particular industry," it concluded that an exemption is not the "purchase" or "sale" of goods and services, but is instead the "assessment and computation of taxes—a primeval government activity." *Id.* at 593 (quoting *New Energy Co.*, 486 U.S. at 277). Therefore, the Court held, "[a] tax exemption is not the sort of direct state involvement in the market that falls within the market-participation doctrine." *Id.*

Although, oddly, cited by the parties in the District Court proceedings but not by the District Court itself, *Camps Newfound* resolves this case. Just as Maine did not purchase services from the relevant charities or sell those services itself, Jersey City here does not purchase or otherwise fund the services of private developers or contractors who are

15

constructing Tax Abated Projects[9] or the goods used in those projects; nor does it sell those services or goods or invest, own, or finance the projects. *See supra* note 2. Instead, the City simply reduces the developers' tax burden for a period of time—an endeavor *Camps Newfound* makes crystal clear is not "direct state involvement in the market," 520 U.S. at 593, but rather the "assessment and computation of taxes—a primeval government activity," *id.* (quoting *New Energy Co.*, 486 U.S. at 277). The exemptions thus do not give the City a proprietary interest in Tax Abated Projects, and we need not reach step two of the *Sage* test to conclude that the City is not acting as a market participant when it enforces the Ordinance.

In reaching a contrary conclusion, this District Court relied on *Regan v. Taxation With Representation of Washington*, 461 U.S. 540 (1983). *Regan*, however, dealt with a different issue entirely: whether it was a violation of the First Amendment for Congress to deny lobbying organizations tax-exempt status under 26 U.S.C. § 501(c)(3). In concluding that it was not, the Supreme Court described tax exemptions as "a form of subsidy" with "much the same effect as a cash grant to the organization of the amount of tax it would have to pay on its income," *Regan*, 461 U.S. at 544,

---

[9] Appellants challenge the legality of PLAs as they relate to Tax Abated Projects, not Public Construction Projects. Therefore, we do not decide whether the City is acting as a market participant with respect to the latter set of projects. *Cf. Mich. Bldg. & Constr. Trades Council v. Snyder*, 729 F.3d 572, 577-78 (6th Cir. 2013) (holding that the state acted as a market participant when it passed a law that forbade "governmental units from entering into PLAs" and that had no effect on private projects).

but it nowhere suggested that a government somehow obtains a proprietary interest in a project that receives an exemption or that its holding had any bearing on the government's status as a market participant for purposes of the NLRA, ERISA, or the dormant Commerce Clause. And if there were any ambiguity on that score, it was surely extinguished by *Camps Newfound* fourteen years later, which squarely addressed whether a tax exemption is functionally equivalent to direct funding for purposes of the market participant exception and held that it was not. Indeed, in holding that a tax exemption does not confer upon a government a proprietary interest, the Court expressly rejected the notion that *Regan*'s equation of tax exemptions to subsidies controls the dormant Commerce Clause analysis. *Camps Newfound*, 520 U.S. at 589 n.22.

Perhaps anticipating that we would find *Camps Newfound* more relevant than *Regan*, Appellees urge us to disregard *Camps Newfound*, asserting that it was abrogated in relevant part by *Department of Revenue v. Davis*. Not so. In *Davis*, a majority of the Supreme Court held that Kentucky's scheme of offering tax exemptions on bonds issued by Kentucky but not on out-of-state bonds did not violate the dormant Commerce Clause, 553 U.S. at 356-57, and a plurality of the Court would have found the differential tax treatment for in-state bonds to be market participation, *id.* at 343-48. The plurality reached this conclusion, however, "only because Kentucky is also a bond issuer" "has entered the market for debt securities." *Id.* at 344. That is, Kentucky was a market participant not because it provided tax exemptions, but instead because it sold the very bonds for which it gave differential tax treatment, and the differential tax treatment thus facilitated Kentucky's own participation in the market. *See id.* at 348 n.17. Not so here, where Jersey

17

City is not selling or providing any goods or services with respect to Tax Abated Projects, nor acting as an investor, owner, or financier with respect to those projects.

We also reject Appellees' rather tenuous argument that the City has a proprietary interest because the Tax Abated Projects will improve the City's economy, which in turn will lead to future tax revenues. Tax abatements designed to improve future revenue streams are not equivalent to the purchase or sale of goods or services and do not transform the City into an investor, owner, or financier of the Tax Abated Projects. *See Sage*, 390 F.3d at 216 (holding that a "projected stream of increased tax revenue" is not a proprietary interest "because it is not comparable to the financial interest that an ordinary market participant has in a project"). Likewise, the fact that the City marks areas for redevelopment and then approves the projects receiving a tax exemption to ensure that they comport with the City's redevelopment plan, *see* N.J. Stat. Ann. §§ 40A:20-3, -8, 40A:21-4; *see also* Mun. Code § 304-6, does not confer a proprietary interest. In *Sage*, for example, where Pittsburgh's redevelopment agency approved the construction of a hotel in an effort to redevelop a district in that city, we held that Pittsburgh had a proprietary interest in the project *only* because the city, through its redevelopment authority, provided bond financing to the hotel and not because it had a general interest in economic redevelopment. 390 F.3d at 216-17. In sum, important and laudable as the City's interest is in redevelopment, that interest does not by itself confer upon the City status as a market participant.

## IV.

Our holding is as narrow as our inquiry. We offer no comment on, much less do we decide, whether the challenged

Ordinance is in fact preempted by the NLRA or ERISA, or whether it runs afoul of the dormant Commerce Clause. We hold only that the District Court erred in concluding that the City acts as a market participant when it enforces the Ordinance with respect to Tax Abated Projects. We therefore reverse and remand to the District Court for further proceedings consistent with this opinion.