NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1330
_____

VICTORIA HANDLE,
                                        Appellant
v.

POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE;
UNITED STATES POSTAL SERVICE
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-15-cv-08071)
District Judge:  Honorable Brian R. Martinotti
_____

Submitted under Third Circuit LAR 34.1(a)
January 16, 2020

Before:  HARDIMAN, PORTER, and PHIPPS, *Circuit Judges*.

(Filed: March 18, 2020)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

This case involves claims of employment discrimination brought by a postal worker against the Postmaster General and the United States Postal Service. The District Court dismissed those claims, not because they lacked merit, but because the employee did not comply with procedural requirements for pursuing those claims. The postal employee now appeals, taking issue with not only the dismissal of her claims but also two additional procedural rulings by the District Court. Upon reviewing the dismissals *de novo* and the procedural rulings for an abuse of discretion, we will affirm the judgment of the District Court.

I

Victoria Handle started working for the United States Postal Service in 1984. Over time, she was promoted to the position of Supervisor of Distribution Operations at the postal facility in Eatontown, New Jersey. Handle's grievances arose in 2012 and 2013 out of actions taken by two of her supervisors: Mary Ducey and Yvette Jackson.

In August 2012, Ducey, who supervised Handle at the Eatontown facility, selected Handle for transfer to the postal facility in Trenton, New Jersey. In receiving that news over the phone, Handle became upset. Ducey believed her to be suicidal and contacted the Postal Police, which led to local police taking Handle to a hospital crisis unit. Handle later learned that Ducey had told employees that she had a nervous breakdown. Based on those events, Handle filed informal and formal administrative complaints with the Postal Service alleging race, sex, and age discrimination, along with unlawful disclosure of confidential medical information.

2

After her transfer to the Trenton facility, Handle reported to Jackson, and that did not go well either. Handle, who had not been disciplined before, received four written warnings for her work performance between December 2012 and May 2013. Handle also alleges that in the presence of co-workers, Jackson encouraged her to use the Employee Assistance Program. According to Handle, Jackson improperly denied her leave requests for Easter and Mother's Day. Those events prompted Handle to supplement her formal administrative complaint, ultimately to assert twelve claims.

The Postal Service investigated that complaint and denied all of Handle's claims. Handle filed an administrative appeal with the Equal Employment Opportunity Commission's Office of Federal Operations, commonly abbreviated as 'OFO.'

On June 10, 2015, OFO issued its decision affirming in part and reversing in part the Postal Service's decision. OFO rejected eleven of Handle's claims but found that a preponderance of the evidence supported one claim: the disclosure of her medical information to other employees. That written decision notified Handle of her options either to seek reconsideration from OFO within 30 days or to file a civil action in federal court within 90 days. Handle did not seek reconsideration from OFO within 30 days. Nor did she file a civil suit within 90 days.

On August 19, 2015, on remand from OFO, the Postal Service awarded Handle $1,000.00 in compensatory damages for her unlawful disclosure claim. That ruling, like OFO's, contained two notices as to Handle's options. First, it informed her that she could appeal to OFO within 30 days. Second, it notified her that she had the right to file a civil action in the United States District Court within 90 days of the decision. If she chose the first option – to appeal to OFO – she would not forego the ability to file a civil action in

3

federal court. Rather, she would have to do so either: (i) within 90 days of OFO's final decision; or (ii) after waiting 180 days from the date that she appealed to OFO, if OFO did not rule beforehand.

On September 17, 2015, Handle filed an appeal with OFO. As a timely appeal to OFO of the Postal Service's decision on August 19, 2015, that appeal triggered the 180-day waiting period during which Handle could not file a civil action in federal court.

On November 13, 2015, before that 180-day waiting period had expired, Handle filed a four-count complaint in District Court, naming the Postal Service and the Postmaster General as defendants. There, she alleged sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, age discrimination under the Age Discrimination in Employment Act, and illegal disclosure of confidential medical information under both the Americans with Disabilities Act and the Rehabilitation Act.

Because she initiated a civil action during the pendency of an appeal, OFO dismissed her appeal pursuant to a regulation. Under that regulation, the filing of a civil action terminated OFO's processing of the appeal. *See* 29 C.F.R. § 1614.409.

Handle's civil action showed a little more promise, at least initially. Her complaint presented claims under multiple federal statutes and was therefore within the jurisdiction of the District Court. *See* 28 U.S.C. § 1331. In addition, the postal defendants did not timely answer her complaint, and Handle requested entry of default, which is the first step in obtaining a default judgment. *See* Fed. R. Civ. P. 55(a). The Clerk of Court entered default against the Postmaster General.

That filing caught the attention of the postal defendants, prompting a letter motion for leave to set aside the entry of default. The District Court granted that request by

4

superimposing a handwritten order on the letter motion. That order explained that "[b]ased on the foregoing, the Court finds good cause to lift the default. . . ."

With the entry of default set aside, the case proceeded according to the scheduling order entered by the District Court. That order imposed March 10, 2017, as the deadline for amending pleadings. On that date, the postal defendants sought to amend their answer to add several additional affirmative defenses, including untimeliness and failure to exhaust administrative remedies. The District Court permitted that amended answer.

Those newly added defenses proved dispositive of Handle's claims. The District Court entered judgment on the pleadings in favor of the postal defendants on all counts. For the discrimination and retaliation claims, the District Court reasoned that those were untimely. For the Rehabilitation Act claim, in which Handle sued for the wrongful release of medical information, the District Court concluded that the claim was unexhausted and premature. The District Court gave Handle leave to amend her complaint as to that claim, which she did. In response, the postal defendants moved to dismiss that amended count, and after determining that, post-amendment, the claim was still premature, the District Court dismissed that count with prejudice and entered a final judgment. Handle timely appealed that order, and we have jurisdiction over her appeal. *See* 28 U.S.C. § 1291.

Handle challenges four rulings by the District Court. She disputes the two substantive rulings: that her discrimination and retaliation claims were untimely and that her Rehabilitation Act claim was premature. She also contends that the District Court committed two procedural errors: first by setting aside the entry of default, and second by

5

permitting the Postal Service to amend its answer on the last day to do so under the scheduling order.

## II

In reviewing *de novo* the District Court's dismissal of Handle's complaint, *see Associated Builders & Contractors Inc. N.J. Chapter v. City of Jersey City*, 836 F.3d 412, 416 (3d Cir. 2016), the District Court did not err.

On June 10, 2015, OFO ruled on Handle's discrimination and retaliation claims. Consistent with the notice that she received from OFO, she had 90 days to file a civil action on those claims. *See* 29 C.F.R. § 1614.407(a), (c); *see also Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 246 (3d Cir. 1999). But Handle did not file suit within that time period; instead she filed suit on November 13, 2015. The District Court did not err in dismissing those claims as untimely.

On August 19, 2015, the Postal Service resolved Handle's Rehabilitation Act claim for the wrongful disclosure of medical information in her favor and awarded her $1,000.00. Handle administratively appealed that determination to OFO on September 17, 2015. That was within 30 days of the Postal Service's determination and was therefore timely. But by filing that administrative appeal, Handle triggered the 180-day waiting period for filing a civil action. *See* 29 C.F.R. § 1614.407(d). And the suit that Handle filed in District Court on November 13, 2015, was within that 180-day waiting period. The District Court did not err in finding that filing to be premature.

Recognizing, however, that the exhaustion requirement of the Rehabilitation Act is prudential, rather than jurisdictional, *see Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007), Handle rejoins that requiring exhaustion in this instance would be futile. To

6

excuse administrative exhaustion on futility grounds requires a "clear and positive showing." *See Cottillion v. United Ref. Co.*, 781 F.3d 47, 54 (3d Cir. 2015) (citations omitted). But Handle did not make such a showing. For instance, she did not identify a blanket administrative policy or an agency practice denying relief to claims such as hers. *See Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 250 (3d Cir. 2002). Without presenting a clear and positive showing of futility, the District Court did not err in dismissing her Rehabilitation Act claim.

### III

Handle also contests the District Court's order vacating default. Entry of default is a ministerial function performed by the Clerk of Courts. *See* Fed. R. Civ. P. 77(c)(2)(B); *see also id.* 55(a); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2692 (4th ed. August 2019 update) (referring to default as an "interlocutory step" taken in anticipation of a final entry of default judgment under Rule 55(b)). Without an answer or other response to a complaint, the entry of default operates as an admission of the factual allegations in the complaint. *See* 10A Wright & Miller § 2688.1.

An entry of default, however, is not necessarily everlasting. As an operation performed by the Clerk of Courts, and not a judge, entry of default requires only a showing of good cause to be set aside. *See* Fed. R. Civ. P. 55(c); *cf. id.* (requiring a motion for relief from judgment under Rule 60(b) to set aside a default judgment); 10A Wright & Miller § 2692 (discussing the differences in the procedures for setting aside default compared with default judgment).

District courts have discretion in evaluating whether good cause exists to set aside an entry of default. *See Brady v. United States*, 211 F.3d 499, 504 (9th Cir. 2000) ("[A]

7

district court's discretion is 'especially broad' when . . . 'it is entry of default that is being set aside, rather than a default judgment. . . .'"); 10 Moore's Federal Practice § 55.71 ("Rule 55 provides that a court may set aside an entry of default, but does not describe any required procedures.").[1]  In exercising that discretion, there is a strong presumption in favor of resolving cases on the merits.  *See In re Semcrude, L.P.*, 728 F.3d 314, 326 (3d Cir. 2013); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984) ("[T]his court does not favor entry of defaults or default judgments."); *see also* 10A Wright & Miller § 2681; 10 Moore's § 55.02; *cf. Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982) (articulating three necessary considerations for overcoming the general presumption in favor of merits resolution in the context of setting aside an entry of default).  And when the federal government is the defaulting party, a court may also consider the heightened showing needed for a default judgment, which is a heavy burden and as a practical matter, makes default judgment quite difficult to obtain.  *See* Fed. R. Civ. P. 55(d) (requiring a claimant to establish "a claim or right to relief by evidence that satisfies the court" before default judgment can be entered against "the United States, its officers, or its agencies"); *see also Jorden v. Nat'l Guard Bureau*, 877 F.2d 245, 251 n.23 (3d Cir. 1989); 10A Wright & Miller § 2702 ("As a practical matter . . . when the government's default is due to a failure to plead or otherwise defend, the court typically either will refuse to enter a default or, if a default is entered, it will be set aside.").

---

[1] *See also* 10A Wright & Miller § 2692; *id.* at § 2694 ("The different treatment in Rule 55(c) of the default entry and default judgment frees a court considering a motion to set aside a default entry from the restraints of Rule 60(b) and entrusts the determination to the discretion of the court.").

Under those standards, the District Court did not abuse its discretion in finding good cause to set aside the Clerk of Court's entry of default. That is so because Handle cannot overcome the presumption in favor of resolving a case on the merits. Nothing in the record suggests that Handle would be unfairly prejudiced. And as explained by the postal defendants in their letter motion, they had meritorious defenses, and they did not timely respond to the complaint because counsel of record was dealing with "significant family medical issues" and was under the "mistaken belief that service was not proper." Those explanations constitute good cause to set aside a default, not only due to the strong presumption in favor of resolving cases on the merits and the personal challenges faced by counsel, *see Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224-25 (9th Cir. 2000) (finding a familial emergency sufficed for relief from judgment under the heightened excusable neglect standard of Rule 60(b)(1)), but also in light of the heightened showings needed to secure a default judgment against the federal government, *see* Fed. R. Civ. P. 55(d). And even if those explanations did not suffice, Handle could not have obtained a default judgment here against the federal government because, for the reasons above, she does not meet the heavy burden of establishing "a claim or right to relief by evidence satisfactory to the court." Fed. R. Civ. P. 55(d).

IV

Handle finally challenges the District Court's decision to allow the postal defendants to amend their pleadings. Because that amendment was timely requested under the pretrial order, *see* Fed. R. Civ. P. 16(b)(4), it should be freely given "when justice so requires," *id.* 15(a)(2), and that determination is left to the discretion of the trial judge, *see Gay v. Petsock*, 917 F.2d 768, 772 (3d Cir. 1990) (committing the decision to

9

allow pleading amendments to the sound discretion of the district judge).  Here, without a showing of undue delay, bad faith, prejudice, or futility, the District Court did not abuse its discretion in allowing amendment.  *See Long v. Wilson*, 393 F.3d 390, 400-01 (3d Cir. 2004) (finding no abuse of discretion where the District Court impliedly permitted an amended answer that disposed of the complaint on timeliness grounds).

* * *

For the forgoing reasons, we will affirm the judgment of the District Court.

10